# CHARLESTON.

REUBEN ANDERSON v. ANTHONY BOWEN *et al.*

Submitted May 26, 1916.    Decided June 1, 1916.

1. STATUTES—*Enactment—Presumptions.*

A bill duly enrolled, authenticated and approved is presumed to have been passed by the legislature in conformity with the requirements of the constitution, unless the contrary is made to appear affirmatively; and the proof of omissions of constitutional requirements, furnished by the journals of the two houses, in matters of procedure, must be clear and conclusive, to overcome such presumption.    (p. 560).

2. SAME.

Though the journal of one of the houses does not in terms show a bill was read a second time and does show members protested that it had not been, the fact may be inferred from a declaration of the presiding officer that it had been, amendments made, advancement to third reading and recital of a third reading, all affirmatively disclosed by the journal.    (p. 562).

3. SAME—*City Charter—Effect of Partial Invalidity.*

Separable provisions in a city charter, even though unconstitutional, do not invalidate such provisions thereof as are not in conflict with the constitution.    (p. 562).

4. SAME.

If provisions of a charter are inhibited by the constitution because they regulate the exercise of the elective franchise to an unreasonable extent, or require unconstitutional qualifications on the part of voters, and the general election laws are made applicable to municipal corporations by the terms thereof, such provisions are separable and do not invalidate the charter in its entirety.    (p. 563).

78 W. Va.

5. CONSTITUTIONAL LAW—*Determination of Constitutional Questions.*
   On a bill to enjoin enforcement of a city charter on account of such provisions, it is not necessary to determine whether they are valid or not. (p. 563).

6. SAME—*Distribution of Governmental Powers—Duties of Election Officers.*
   It is competent for the legislature to make all duties of officers and tribunals, respecting elections and election contests, legislative, administrative or ministerial, and deprive them of all judicial character. (p. 564).

(MASON, JUDGE, absent).

Appeal from Circuit Court, Marion County.

Bill in equity by Reuben Anderson against Anthony Bowen, Mayor of the City of Fairmont, and others. From a decree for plaintiff, defendants A. S. Fleming and others appeal.

*Reversed, injunction dissolved, and bill dismissed.*

*Harry Shaw, W. S. Meredith,* and *John W. Mason, Jr.,* for appellants.

*M. M. Neely, Scott C. Lowe* and *W. E. R. Byrne,* for appellee.

POFFENBARGER, JUDGE:

This is a second appeal in the cause reported in 87 S. E. 186. After it went back to the circuit court, a decree similar to the one disposed of on the former appeal, enjoining enforcement of the new charter of the City of Fairmont, on the ground of unconstitutionality, was entered.

One of the principal grounds of attack made upon the charter is alleged non-compliance with the constitutional provision declaring no bill shall become a law, unless fully and distinctly read on three separate days, in each house of the legislature, if such requirement is not dispensed with in a prescribed manner. For the purposes of this bill, the constitutional rule was not suspended. The bill passed the House regularly. The senate journal affirmatively and specifically shows a first and third reading. It does not, in terms say there was a second reading. An entry says the clerk reported it. Another shows a senator declared from the floor, that it

78 W. Va.

had not been read a second time. Still another says the president declared "That the announcement had been made that the bill had been read a second time." There is a recital that the bill was taken up out of its order for immediate consideration, on second reading. Upon the chair's inquiry for amendments and notice of intention to order it to its third reading, if there were none, a member moved that the bill be read a second time, section by section. Another moved an indefinite postponement, for lack of statutory notice. On this, there was a roll call resulting in defeat of the motion. Then the motion to read the bill a second time section by section was renewed. This seems to have been ignored. Then an amendment was adopted by a recorded vote. Pending a motion to order the bill to its third reading, a senator rose to a point of order, viz., that Rule 42 provides that on the demand of any two members, a bill shall be read section by section, for amendment, and said rule had not been complied with. An adverse ruling on the point of order was sustained, on an appeal. An amendment was then adopted by unanimous consent. Before the vote was taken on the motion to order the bill to its third reading, a senator, in explanation of his negative vote, declared the bill had not been read a second time. The motion failed, and several additional amendments were made, before it was formally ordered to its third reading.

My personal opinion is not in accord with the authorities on the interpretation of the constitutional provision involved. That it is mandatory there can be no doubt, and I think it is equally clear that the journal should affirmatively show compliance with it, not by mere inference or presumption, but by clear and unequivocal language. A legislative journal evidencing the enactment of a law regulating a community or a state, giving or denying rights to a whole populace, not in single instances, but for long periods of time, ought to be as clear and certain as the entry of a judgment in a court of law, disposing of a single controversy between two citizens. No court will entertain the idea of a judgment expressed otherwise than by clear, positive, unequivocal language. There can be no such thing as a judgment by mere intendment or inference. No judgment can stand upon a mere presumption

that the court rendered it.    To say a law that may become the foundation of innumerable rights may do so is to my mind a most flagrant and striking inconsistency and departure from sound principle.

It has nevertheless been countenanced and adopted by this court.    The rule sanctioned by the decision in *Price et·al.* v. *Moundsville,* 43 W. Va. 526, is stated as follows:    "A bill duly enrolled, authenticated and. approved is presumed to have been passed by the legislature in conformity with the re-, quirements of the constitution, unless the contrary is made to affirmatively appear; and the proof furnished by the journals of the two houses in matters of procedure must be clear and. conclusive, to overcome this presumption."

Though the presiding officer stated it had been announced that the bill had been read a second time and it was ordered to its third reading, read a third time and passed, I seriously doubt the second reading.    If it had occurred, I think the clerk would have noted the fact.    It was his uniform practice to do so.    An inadvertent omission is hardly possible, in view of two open declarations on the floor of the senate that it had not been read.    My associates, however, are of the opinion that the fact may be inferred from the entry that the bill was read a third time, the declaration of the presiding officer that it had been so read, the adoption of amendments and other disclosures of the journal, or, at the least, that enough appears to create a doubt as to whether the reading occurred or not. They say an omission of the requirement does not clearly and conclusively appear, and that, to overthrow the presumption of compliance, it must do so.

Non-compliance with the requirements of sec. 10, ch. 12, Code, ser. sec. 316, providing for publication of notices of applications for passage of acts to amend municipal charters, does not invalidate the act.    That is not a consitutional limitation.    An act passed in disregard thereof impliedly repeals it *pro tanto.  McDonald* v. *State,* 80 Wis., 407; *In re Ryan,* 80 Wis., 414; *State* v. *Brown,* 33 S. C., 151; *St. Louis R. Co.* v. *Gill,* 54 Ark., 101; *Sweitzer* v. *Territory,* 5 Okla., 297; *Jones* v. *Territory,* 5 Okla., 536; 26 Am. & Eng. Ency. L. 538.

The act in question sets up an entire and complete system

of government for the City of Fairmont. Surely some of its provisions are valid and separable from any particular provisions that may be unconstitutional. The bill has for its purpose an adjudication of complete invalidity, and restraint of the enforcement of any of its provisions and the decree entered conforms to the prayer thereof.

It would be useless to enumerate all of the many provisions of the act assailed by the bill, some as being unconstitutional and others as being void for uncertainty and contradiction in terms. It suffices to say that all of them are separable and that none of them, with possibly a single exception, are at this time invoked against any right claimed by the plaintiff or any other person. Indeed, only two of them are noticed in the brief for the appellees.

These two are said to be restrictive of the right of suffrage to such an extent as to render them unconstitutional. One of them, sec. 11 of Art. 1, pertains to the form of the ballots to be used in the city elections, and has for its purpose preclusion of anything on them to indicate the political professions or affiliations of candidates. If this is more than a regulation of the elective franchise, permissible by the constitution, and renders the section void, the general election law will govern and take its place, and a remedy to enforce observance of and compliance with the latter, in exclusion of the charter provision, will not be hard to find. Sec. 85, ch. 3 of the Code, expressly makes the general election laws applicable to municipal corporations, in the absence of charter provisions for such elections.

The enforcement of sec. 77 of Art. 2, denying to any voter the assistance of election officers, in the preparation of his ballot, for any reason or cause other than physical inability to prepare it himself, would seem impliedly and necessarily to establish an educational qualification of voters, in violation of sec. 1 of Art. IV of the Constitution, giving the right to vote to the male citizens of the state generally and excluding certain classes of persons, but nobody on account of illiteracy. But, if it does, and is, for that reason, void, the voter against whom it may be invoked has a remedy by mandamus against the election officers and, no doubt, by an action for damages,

if that should fail him for any reason. An unconstitutional law affords no protection to an officer or anybody else. If any candidate has sufficient interest in a vote offered and rejected by reason of this provision, to entitle him to have it counted, though not actually deposited, he may obtain the benefit of it in a contest proceeding. McCrary, Elections, secs. 527a, 527b.

Power in the legislature to authorize the board of election supervisors, created by the act, to perform duties and functions that are generally regarded as being *quasi-judicial,* is clear and undoubted. If judicial power cannot be conferred upon such a body, legislative and administrative power respecting elections and election contests, can be delegated to it, by virtue of sec. 11, Art. IV of the Constitution, and, if necessary to uphold the act, it would have to be interpreted as conferring legislative power. *McWhorter* v. *Dorr,* 57 W. Va. 608.

For the reasons stated, the decree complained of will be reversed, the injunction dissolved and the bill dismissed.

*Reversed, injunction dissolved, and bill dismissed.*