STATE OF WEST VIRGINIA

*v.*

WILLIAM J. HESTON

(No. 10471)

Submitted April 16, 1952. Decided July 8, 1952.

Fox, JUDGE, not participating.

*Chauncey Browning, Attorney General, George W. Stokes, Assistant Attorney General, Donald L. Schaffer,* for plaintiff in error.

*Tusca Morris, George W. May,* for defendant in error.

HAYMOND, JUDGE:

The defendant, William J. Heston, was indicted in the Criminal Court of Marion County, West Virginia, at its regular January Term, 1952, for a misdemeanor. The offense charged in the indictment is that in November, 1951, the defendant, being the owner of a certain motor vehicle which was not specially designed to transport and haul only liquid or semi-liquid products, without a special permit in writing authorizing the operation of such motor vehicle, knowingly and unlawfully drove such motor vehicle upon a highway known as the Pleasant Valley Road, in Marion County, with a weight imposed upon

such highway by the rear axle of such motor vehicle of 19,210 pounds, which is in excess of the maximum weight of 18,000 pounds permitted by Subsection (a), Section 8, Article 17, Chapter 17-C of Chapter 129, Acts of the Legislature, 1951, Regular Session, and a tolerance of five per cent of such weight of 900 pounds, in violation of Section 14 of the same article and chapter.

To the foregoing indictment the defendant filed his plea in abatement and to the plea in abatement the State of West Virginia filed its written demurrer. The criminal court, by order entered January 28, 1952, overruled the demurrer to the plea in abatement, and held the statute, Chapter 129, Acts of the Legislature, 1951, Regular Session, to be unconstitutional, null and void. The State of West Virginia declined to file any replication to the plea in abatement; and the criminal court, on motion of the defendant, by order entered January 31, 1952, quashed the indictment, dismissed the proceeding, and discharged the defendant.

Upon writ of error to the final judgment of the criminal court, the judge of the circuit court of Marion County, by order entered in vacation on February 14, 1952, affirmed the judgment of the criminal court. To that order this Court, under Section 30, Article 5, Chapter 58, Code, 1931, awarded this writ of error upon the petition of the State of West Virginia.

By his plea in abatement the defendant, asserting that the indictment is fatally defective because it is not based upon a valid statute, attacks the constitutionality of the act, Chapter 129, Acts of the Legislature, 1951, Regular Session, on substantially these grounds: (1) The regular 1951 session of the Legislature, not having been legally extended beyond its expiration date, except by the Governor for a period of five days to enable it to pass a budget bill, the act, designated as Engrossed House Bill No. 189, having been previously passed by the House of Delegates, was not passed by the Senate until after the expiration on March 10, 1951, of the sixty day period imposed by

Article VI, Section 22, of the Constitution of this State for all sessions of the Legislature other than extraordinary sessions; (2) the act, being designated Engrossed House Bill No. 189, not having been presented to the Governor until March 16, 1951, which was six days after the expiration of the sixty day period on March 10, 1951, was not presented to the Governor in the manner required by Article VII, Section 14, of the Constitution of this State; and (3) the act contains discriminatory and arbitrary provisions, in regard to the weights and the types of different motor vehicles, which exempt certain motor vehicles specially designed to transport and haul liquid or semi-liquid products, during the life of such vehicles from the penalties imposed by the act, contrary to the provisions of Article III, Sections 1 and 10, of the Constitution of this State and of the Fifth and Fourteenth Amendments to the Constitution of the United States.

The plea in abatement sets out in detail the facts and the Constitutional provisions, including Article VI, Section 22, and Article VII, Section 14, upon which the defendant relies to support his contention that the statute is invalid.

As to the first ground that the act was not passed by the Senate until after midnight of March 10, 1951, the expiration date of the session, the plea states certain proceedings shown by the journal of the Senate under date of March 10, 1951, relating to House Bill No. 30, as to which, following a statement of the President that "we are still operating under the tenth of March.", Senator Eddy stated that "it is now twenty minutes after eight, on March eleventh, one thousand nine hundred fifty-one, and that when Eng. House Bill No. 30 was considered in this body approximately an hour ago, it was then twenty minutes after seven, on March eleventh, one thousand nine hundred fifty-one"; and alleges that, on motion of another Senator, the foregoing remarks were incorporated in the journal by a vote, upon a division, of 14 yeas and 11 nays. The plea, with further reference to the time of the passage of the act by the Senate, also alleges that the journal of the Senate "shows that immediately after

Enrolled House Bill No. 30 was considered and passed, Enrolled House Bill No. 189 was actually considered and passed by the Senate"; that House Bill No. 189 was actually passed by the Senate after House Bill No. 30 had actually been passed; and that "therefore, said Enrolled House Bill No. 189, was considered and acted upon and passed by the Senate on Sunday, the 11th day of March, 1951, between 7:20 o'clock P. M. and twenty minutes after eight o'clock P. M., Sunday, the 11th day of March, 1951, after the term of the Legislature had actually, legally and constitutionally expired under the provisions of law and the Constitution of West Virginia." The plea further alleges that "said Legislature, Regular Session, 1951, after midnight, on the 10th day of March, 1951, continued to be in session under a double-barrelled situation, to-wit: one, said Legislature had been extended beyond twelve o'clock midnight, on the 10th of March, 1951, under said proclamation of the Governor for five days for the purpose of considering and the passage of said Budget Bill, and the other, an illegal and unconstitutional continuation of said Legislature, Regular Session, 1951, done by surreptitiously, fraudulently, illegally and unconstitutionally turning back the time clock in and before said House of Delegates, and the time clock in and before said Senate, and thereby continuing and prolonging the day of said 10th day of March, 1951, past twelve o'clock midnight, surreptitiously, fraudulently, illegally and unconstitutionally, and thereby holding said Legislature in Session for the passage of said Enrolled House Bill No. 189, which both said House of Delegates and said Senate had passed and enacted, after twelve o'clock midnight on the 10th day of March, 1951, and, therefore, said Engrossed House Bill No. 189 as enacted into Chapter 129 of the Acts of said Legislature, Regular Session, 1951, constitutes a nullity and is void."

With reference to the second ground, that the act after its passage was not presented to the Governor in the manner required by Article VII, Section 14, of the Constitution of this State, the plea alleges that the journals of

the House of Delegates and the Senate, under the purported date of March 10, 1951, show that the Joint Committee on Enrolled Bills reported that: "Your Joint Committee on Enrolled bills has examined, found truly enrolled, and on the 16th day of March, 1951, presented to His Excellency, the Governor, for his action" certain bills signed by the Speaker of the House of Delegates and the President of the Senate, in which report was included House Bill No. 189; and that there is appended to that act, as now on file in the office of the Secretary of State, this certificate: "The Joint Committee on Enrolled Bills hereby certifies that the foregoing bill is correctly enrolled. Robert C. Byrd, Chairman, Senate Committee, James W. Loop, Chairman, House Committee. Originated· in House of Delegates, takes effect July 1, 1951. James H. Myers, Clerk of the Senate, J. R. Aliff, Clerk of the House of Delegates, W. Broughton Johnston, President of the Senate, W. E. Flannery, Speaker of the House of Delegates. The within approved this the 16th day of March, 1951. Okey L. Patteson, Governor. Filed in the Office of the Secretary of State of West Virginia, March 16, 1951, D. Pitt O'Brien, Secretary of State". The plea, dealing with the same subject matter, further alleges "that said Enrolled House Bill No. 189 was actually presented to the Governor of West Virginia, on the 16th day of March, 1951, which is six days later and six days after said Legislature actually ceased to exist, as purportedly shown from said Journals as of the 10th day of March, 1951, at midnight of that day; that by the action of said Legislature, in and by said Joint Committee, in presenting said Enrolled House Bill No. 189 six days after the expiration of said term of said Legislature to the Governor precluded him thereby from having five days for considering said bill after said expiration of said session of said Legislature, and would, therefore, be unconstitutional, even though the Governor purportedly and illegally signed said bill and filed it with the Secretary of State; that said Chapter 129 of the Acts of the Legislature, Regular Session, 1951, was not presented to the Governor in the manner and to the

extent as required under the terms of Article VII, Section 14, of the West Virginia Constitution; that such Chapter 129 thereby has not been validly enacted and constitutes a nullity, and that, therefore, said Enrolled House Bill No. 189, purported to have been passed by said Legislature and approved by the Governor is simply no more than a stray paper."

With regard to the third ground of attack upon the constitutionality of the act, the plea alleges that it sets up certain discriminatory and arbitrary standards with respect to "the weights and types of different trucks and in that it exempts truck carriers and their vehicles in the transporting and hauling of liquid or semi-liquid products relating to weight limitations 'for the life of such vehicle' * * *, and that such exemptions are not afforded or given to the carriers of solid fuel such as truckers of coal or coal products, as the defendant herein, William J. Heston, and hence said Statute deprives him of his property without due process of law, and is therefore unconstitutional"; and that the act is violative of Article III, Sections 1 and 10, of the Constitution of this State, and of the Fifth and Fourteenth Amendments to the Constitution of the United States.

Though with reference to the first and the second grounds of attack upon the constitutionality of the act set forth in the plea in abatement there are additional allegations, those allegations merely repeat the substance of the allegations of the plea in abatement which have been already stated; and, as the additional allegations of the plea in abatement add nothing of substance, the allegations mentioned in the preceding paragraphs of this opinion constitute the material subject matter of the plea in abatement.

The defendant contends that, as the only pleading filed by the State is its written demurrer to the plea in abatement, which the criminal court overruled, and as the State refused to file a general replication to the plea in abatement, the facts set forth in the plea in abatement, upon the

demurrer, must be taken as true, under the well recognized principle that upon demurrer the demurrant admits the truth of all well pleaded material facts in the pleading to which the demurrer is filed.

In considering the regularity and the validity of the action of the Legislature in enacting a statute, this Court will take judicial notice of the records of the offices of the Governor, of the Secretary of State, and of the clerks of both the Senate and the House of Delegates which records, of course, include the journal of each house of the Legislature. *State ex rel. Armbrecht* v. *Thornburg*, 137 W. Va. 60, 70 S. E. 2d 73; *Charleston National Bank* v. *Fox*, 119 W. Va. 438, 194 S. E. 4; *Osburn* v. *Staley*, 5 W. Va. 85; 13 Am. Rep. 640; *Gardner* v. *The Collector*, 6 Wall (73 U. S.) 499, 18 L. Ed. 890; 15 R. C. L. 1066; 20 Am. Jur., Evidence, Section 42; 31 C. J. S., Evidence, Section 43.

In 15 R. C. L. 1066 the text, quoted with approval in *Charleston National Bank* v. *Fox*, 119 W. Va. 438, 194 S. E. 4, is in these words: "Naturally the laws of a state are judicially noticed by the courts of that state, for such is the purpose of their existence, and it is immaterial whether the law in question be written or unwritten. Every fact upon which, in any view, depends the question whether a document purporting to be a statute has, by legislative action, been invested with the force of law, is, in its nature, a public fact and will be noticed by the court in determining what is and what is not the law of the state. So the time when a public statute of the state takes effect and becomes a law, and whether it exists as law at any particular time, is a matter of judicial notice with the courts of the state."

In *Charleston National Bank* v. *Fox*, 119 W. Va. 438, 194 S. E. 4, involving the question whether an act presented to the Governor was in fact the act passed by the Legislature, this Court said: "Under the authorities and in sound logic, when a bill, passed by the Legislature, is printed in the acts as having become a law without the signature of the Governor, this Court will take judicial

notice of such facts as will enable it to determine the question of its presentation to the Governor. In pursuing this inquiry, judicial notice will be taken of the records of the offices of the Governor, Secretary of State, and clerks of both the Senate and House of Delegates." In *Osburn* v. *Staley*, 5 W. Va. 85, 13 Am. Rep. 640, point 3 of the syllabus is in these words: "The constitution of West Virginia requires each branch of the legislature to keep a journal, and provides that on the passage of every bill the vote shall be taken by yeas and nays, and be entered on the journal, and no bill shall be passed by either branch without an affirmative vote of a majority of the members elected thereto; and on a question touching the validity of an act, this court can look beyond the authentication of the act, to the journal of either branch, to see if the bill passed by the required number of votes." In the opinion in that case, this Court quoted with approval this passage from Cooley, Constitutional Limitations, First Edition (1868), p. 135: "Each house keeps a journal of its proceedings, which is a public record, and of which the courts are at liberty to take judicial notice. If it should appear from these journals that any act did not receive the requisite majority, or that in respect to it the legislature did not follow any requirement of the constitution, or that in any other respect the act was not constitutionally adopted, the courts may act upon this evidence, and adjudge the statute void. * * *." From the cited authorities, it is clear that the courts have the right, and that it is their duty, to take judicial notice of the journals of both houses of the Legislature and other legislative records in determining whether constitutional provisions relating to the enactment of legislation have been complied with and observed.

With regard to the relation of the doctrine of judicial notice to the pleadings in judicial proceedings the text in 20 Am. Jur., Evidence, Section 25, contains these statements: "The general rule prevails that judicial notice is not dependent upon the pleadings in the case. In other words, matters of which judicial notice may be taken need

not be stated in the pleadings; the court will consider such matters although not pleaded." In 71 C. J. S., Pleading, Section 7, the statement is that "Facts of which the court will take judicial notice need not be alleged, and the courts will read a pleading as if it contained a statement of such facts, even when there is an express allegation to the contrary. An allegation which is inconsistent with, or contradictory of, facts judicially noticed is nugatory and will be disregarded." When facts alleged are out of harmony or inconsistent with, or contrary to, facts of which courts take judicial notice, the facts alleged will be disregarded. *Verde River Irrigation and Power District* v. *Salt River Valley Waters Users Association,* CCA Ninth Circuit, 94 F. 2d 936. Allegations of facts which are inconsistent with facts which courts notice judicially are negatived and are not sufficient to sustain a cause of action or a defense. *Hinds* v. *Federal Land Bank of New Orleans,* 235 Ala. 360, 179 So. 194. See also *The Creek Nation* v. *The United States,* 92 Ct. Cl. 346, certiorari denied, 313 U. S. 581, 61 S. Ct. 1099, 85 L. Ed. 1538. As to legislative journal entries 20 Am. Jur., Evidence, Section 42 uses this language: "There is no necessity that the pleadings make an issue in order for the court to take judicial notice of legislative journal entries; the court takes notice of the legislative proceedings as recorded therein to the same extent that it takes notice of statutes of the legislature." In testing the legal sufficiency of a plea in abatement which omits material facts of which courts take judicial notice, such omitted facts should be considered; and if such omitted facts and the facts alleged in the plea in abatement, considered together, do not constitute a valid defense, a demurrer to such plea in abatement should be sustained.

The plea in abatement omits to state a number of pertinent and material facts, shown by the journal of the Senate under the date of March 10, 1951, relating to its action in considering and passing House Bill No. 30 and House Bill No. 189, which, according to the journal, are closely associated. As already indicated, these omitted facts, disclosed by the journal, and of which this Court will

take judicial notice, even though not pleaded, should be considered in determining the legal sufficiency of the plea in abatement and whether it sets forth a valid defense to the indictment.

Though not indicating the hour, the journal of the Senate of March 10, 1951, shows that House Bill No. 30, on third reading, coming up in regular order, was read a third time and passed with its title, and that on the passage of that bill the yeas were 16, the nays 15, and one Senator was absent or did not vote. The next action taken by the Senate related to House Bill No. 436, which, according to the journal, was read a second time and a motion that the constitutional rule requiring a bill to be fully and distinctly read on three different days be dispensed with was defeated. The journal shows that the next action of the Senate, after that taken in connection with House Bill No. 436, related to House Bill No. 189, and that as to it the first action taken was the consideration and the adoption of the report of the Committee on Conference which had previously been adopted by the House of Delegates. Immediately following the adoption by the Senate of the report of the committee, according to the journal, these proceedings occurred in regular order:

"The bill, as amended by the conference report, was then passed with its title.

"On the passage of the bill,

"The yeas were: * * * 27

"The nays were: * * * 4

"Absent or not voting: * * * 1.

"Mr. Bean moved that the bill take effect July 1, 1951.

"On this question,

"The yeas were: * * * 27.

"The nays were: * * * 4.

"Absent or not voting: * * * 1.

"So, two-thirds of all the members elected to the Senate having voted in the affirmative the President declared the bill (Eng. H. B. No. 189) takes effect July 1, 1951.

"*Ordered,* That Mr. Bean communicate to the House of Delegates the action of the Senate.

"Mr. Bean moved that the Senate recess for five minutes.

"Whereupon,

"The following proceedings were had on,

"Eng. House Bill No. 30 * * *.

"MR. BEAN: Mr. President, in view of the fact that I understand there is a desire among some members to make another motion, I withhold the motion to recess for two minutes.

"MR. HOLDEN: Mr. President, I would like to recommend that Eng. House Bill No. 30 be taken up again and be voted on—reconsideration of Eng. House Bill No. 30.

"MR. PRESIDENT: Do you move that we reconsider the vote by which we passed Eng. House Bill No. 30?

"MR. HOLDEN: To reconsider Eng. House Bill No. 30.

"MR. AMOS: Mr. President, it isn't in regular order.

"THE PRESIDENT:  The regular order has been demanded."

Then follows a page of the journal embodying the discussion of the "regular order" and the action taken on that subject. Immediately after that action, the statement of the President that "we are still operating under the tenth of March.", the remarks of Senator Eddy "that it is now twenty minutes after eight, on March eleventh, one thousand nine hundred fifty-one, and that when Eng. House Bill No. 30 was considered in this body approximately an hour ago, it was then twenty minutes after seven, on March eleventh, one thousand nine hundred fifty-one", and the vote of 14 yeas and 11 nays, upon a division, on the motion to incorporate in the journal the foregoing re-

marks of Senator Eddy, as alleged in the plea in abatement, occurred in the order just stated.

The journal of the Senate and the journal of the House of Delegates state affirmatively that each house of the Legislature finally adjourned on March 10, 1951, and the certificate of the clerk of each house is to the same effect. Whether the Legislature finally adjourned its regular session on or after March 10, 1951, however, has no important bearing upon the question of the time of the passage of House Bill No. 189 if that bill was actually passed before the end of that day. The journals and the certificates are referred to merely to indicate the state of the legislative records on that point.

The facts alleged in the plea in abatement relating to the contention that the act was passed after midnight of March 10, 1951, and for that reason is invalid, do not support that contention and the allegations to that effect, being merely statements of a conclusion, are not sufficient, are not established by the plea in abatement, and are not admitted by the failure of the State to file a replication to that plea. See 71 C. J. S., Pleading, Section 14; *Hinds v. Federal Land Bank of New Orleans*, 235 Ala. 360; 179 So. 194.

Additional facts disclosed by the journal, but not set forth in the plea in abatement, show clearly that the only action taken by the Senate between its passage of House Bill No. 30 and of House Bill No. 189, consisted of its consideration of House Bill No. 436 on second reading and its rejection of the motion to dispense with the constitutional rule requiring a bill to be fully and distinctly read on three different days; that the motion to reconsider House Bill No. 30, which was defeated, occurred subsequent to the passage of both of those bills; and that the remarks of Senator Eddy, with reference to the time his statements were made and the time House Bill No. 30 was "considered", relate to the motion to reconsider that bill and not to its earlier passage by the Senate.

The facts alleged in the plea in abatement and the

additional facts shown by the quoted portion of the journal of the Senate, but omitted from the plea in abatement, do not disclose any ambiguity, conflict or contradiction in the journal in relation to the time of the passage by the Senate of House Bill No. 30 or House Bill No. 189, and do not show, clearly and convincingly, that either of those bills was passed by the Senate after midnight of March 10, 1951, the last day of the regular session, 1951, of the Legislature. The statement of the President of the Senate that "we are still operating under the tenth of March.", contrary to the contention of the defendant that it indicated a different date, is equivalent to and means that "we are still operating on the tenth of March.", and is an official pronouncement that the Senate was then in session on that day. The entry in the journal, by a vote of 14 to 11 upon a division, of the statement of Senator Eddy of the time at which it was made and of the time at which House Bill No. 30 was considered incorporates that statement in the record of the Senate but does not establish it as correct or impeach the entries in the journal. *Anderson* v. *Bowen*, 78 W. Va. 559, 89 S. E. 677; *City of Ensley* v. *Simpson*, 166 Ala. 366, 52 So. 61; *Auditor General* v. *Board of Supervisors*, 89 Mich. 552, 51 N. W. 483. The vote of the Senate did not declare the statement to be correct but merely authorized its entry in the journal.

In the recent case of *State ex rel. Armbrecht* v. *Thornburg*, 137 W. Va. 60, 70 S. E. 2d 73, the contentions, among others, were that House Bill No. 30 was not passed by the Senate until after midnight of March 10, 1951, the final day of the regular session of the Legislature, and that certain statements in the journal of the Senate, referred to earlier in this opinion, including the remarks of Senator Eddy, relating to the time when that bill "was considered", created an ambiguity in the journal of the Senate which rendered admissible extrinsic oral evidence tending to show that the bill was actually passed by the Senate after that date. This Court, in rejecting those contentions and in sustaining the constitutionality of the act, said: "The Senate Journal clearly shows that the bill passed

tnat body on the tenth of March, 1951, within the sixty day period." After quoting in the opinion a number of excerpts from the journal of the Senate, this Court also said:

"The statements quoted do not disclose any ambiguity in the records as to the time of the passage of the act. The statement of Senator Eddy 'that it is now twenty minutes after eight, on March eleventh, one thousand nine hundred fifty-one, and that when Eng. House Bill No. 30 was considered in this body approximately an hour ago, it was then twenty minutes after seven, on March eleventh, one thousand nine hundred fifty-one.', does not necessarily refer to the time of the passage of the act. It refers, in fact, to the motion of Senator Holden to 'reconsider' the act sometime after the passage thereof. This is made clear by the later remark of Senator Eddy that 'I am perfectly willing to do that if the motion to reconsider can be considered.' Moreover, we can not assume that the Senator intended to use the word 'consider' as being synonymous with the word 'passed'.

"We are not here called upon to decide whether the quoted statements of Senator Eddy, assuming such statements to have clearly referred to the 'passage' rather than to the 'reconsideration' of the bill, would be of sufficient purport to overcome the strong presumption existing in favor of the validity of an enrolled bill. We merely hold that the statements do not constitute such an ambiguity or conflict in the public records as to permit the Court to consider extrinsic evidence relating thereto."

The foregoing quotations from the opinion in the *Armbrecht* case are directly applicable to the case at bar and justify the conclusion of this Court that the journal of the Senate shows that House Bill No. 189 was passed by the Senate on the tenth of March, 1951, within the sixty day period and that the journal is unambiguous and free from conflict or contradiction as to the time of the passage of that bill.

On the question whether an act may be impeached for

failure by the Legislature to comply with constitutional requirements in enacting it the decisions of the courts in different jurisdictions are in conflict. Some courts hold that the courts will not look beyond an enrolled bill to determine its constitutionality and that it will be conclusively presumed to have been regularly passed by the Legislature when, from the face of the bill, it appears to be properly authenticated. *Western Union Telegraph Company* v. *Taggart,* 141 Ind. 281, 40 N. E. 1051, 60 L. R. A. 671; *Territory ex rel. Haller* v. *Clayton,* 5 Utah 598, 18 P. 628; *Morrow* v. *Henneford,* 182 Wash. 625, 47 P. 2d 1016; *Atchison, Topeka & Sante Fe Railway Co.* v. *State of Oklahoma,* 28 Okl. 94, 113 P. 921, 40 L. R. A., N. S., 1; *Field* v. *Clark,* 143 U. S. 649, 12 S. Ct. 495, 36 L. Ed. 294. According to the weight of authority, however, the courts may look to the journals of the Legislature and other public records, but not to extrinsic evidence, to determine whether an act has been passed in accordance with the constitutional requirements. *Wise* v. *Bigger,* 79 Va. 269; *Jackson* v. *State,* 131 Ala. 21, 31 So. 380; *Andrews* v. *People,* 33 Colo. 193, 79 P. 1031; *Koehler* v. *Hill,* 60 Iowa 543, 14 N. W. 738, 15 N. W. 609; *Attorney General* v. *Rice,* 64 Mich. 385, 31 N. W. 203; *State ex rel. McKinley* v. *Martin,* 160 Ala. 181, 48 So. 846; *White* v. *Hinton,* 3 Wyo. 753, 30 P. 953; 17 L. R. A. 66; *Weeks* v. *Smith,* 81 Me. 538, 18 A. 325; *State ex rel. Herron* v. *Smith,* 44 Ohio St. 348, 7 N. E. 447, 12 N. E. 829; *Homrighausen* v. *Knoche,* 58 Kan. 817, 50 P. 879; *Integration of Bar Case,* 244 Wis. 8, 11 N. W. 2d 604, 12 N. W. 2d 699, 151 A. L. R. 586; *State ex rel. Cline* v. *Schricker,* 228 Ind. 41, 88 N. E. 2d 746, 89 N. E. 2d 547.

The rule to be derived from the decisions of this Court by which the validity of an enrolled bill which appears from the face of the bill to be properly authenticated is determined when its validity is assailed on the ground that the Legislature failed to comply with constitutional requirements in its enactment is that a bill duly enrolled, authenticated and approved, is presumed to have been passed by the Legislature in conformity with the requirements of the Constitution unless the contrary affirmatively

appears from the journal of either house or other legislative records, and that the failure of the Legislature to comply with constitutional requirements in its enactment, which can be considered only when disclosed by ambiguity, omission or conflict in such journal or other legislative records, must be clearly and convincingly established to overcome such presumption. See *State ex rel. Armbrecht* v. *Thornburg,* 137 W. Va. 60, 70 S. E. 2d 73; *Charleston National Bank* v. *Fox,* 119 W. Va. 438, 194 S. E. 4; *Combs* v. *City of Bluefield,* 97 W. Va. 395, 125 S. E. 239; *Anderson* v. *Bowen,* 78 W. Va. 559, 89 S. E. 677. With regard to the weight and the effect of the journals of the two houses of the Legislature and other legislative records in determining whether the requirements of the Constitution have been satisfied in the enactment of a statute, such records when clear and unambiguous, are presumed to be correct, and the contrary must be clearly and convincingly established to overcome such presumption; and when such records are clear and free from ambiguity or conflict, extrinsic evidence can not be admitted to impeach them or to overcome the presumption that they are correct. See *State ex rel. Armbrecht* v. *Thornburg,* 137 W. Va. 60, 70 S. E. 2d 73; *Capito* v. *Topping,* 65 W. Va. 587, 64 S. E. 845, 22 L. R. A., N. S., 1089; *Anderson* v. *Bowen,* 78 W. Va. 559, 89 S. E. 677; *Price* v. *City of Moundsville,* 43 W. Va. 523, 27 S. E. 218, 64 Am. St. Rep. 878. As House Bill No. 189 is an enrolled bill which on its face appears to have been duly authenticated and approved, as there is no ambiguity or conflict in the journal of the Senate with respect to the time of the passage of House Bill No. 189, which would have occurred if the remarks of Senator Eddy had referred to the time of the passage of House Bill No. 30 instead of the time of the consideration of the motion to reconsider it, and as that journal shows that it was passed by the Senate on March 10, 1951, the undenied allegations of the plea in abatement do not clearly and convincingly establish the contrary, or overcome the presumption that such journal on that point is correct, and that presumption must prevail and be given controlling force and effect.

The allegations of the plea in abatement to the effect that by turning back the time clock in the House of Delegates and the time clock in the Senate, for the purpose of prolonging the day of March 10, 1951, beyond its expiration at midnight of that day and keeping the Legislature in session after that time for the passage of House Bill No. 189, though not denied by replication, when considered together with the journals of both Houses of the Legislature, of which journals the courts take judicial notice, do not establish those facts. As already pointed out, the journal of the Senate shows that House Bill No. 189 was passed on March 10, 1951, although the hour of its passage does not appear. This legislative record is clear and unambiguous and free from conflict or contradiction on that point. There is nothing in any of the records of the regular session, 1951, of the Legislature which indicates that the time clock in either House was stopped or turned back before midnight of March 10, 1951, or that creates any ambiguity concerning that fact which would permit its establishment by extrinsic evidence. For these reasons that question can not be determined by this Court in this proceeding. It should be said, however, that the device or the practice of stopping or turning back the legislative clock is emphatically disapproved. Such device or practice can not in law stop the actual passage of time or lawfully continue or prolong a regular session of the Legislature beyond the end of the sixty day limit imposed by Article VI, Section 22, of the Constitution of this State. Any legislative action taken, after the expiration by the actual passage of time at midnight of the sixtieth day of an unextended regular session, under the device or the practice of stopping or turning back the legislative clock, or other like device or practice, is forbidden by the Constitution of this State, is unconstitutional, null and void and, in a proper proceeding in which it is shown by competent evidence that any such action has been taken, will be necessarily and unhesitatingly so held and declared by this Court. See *State ex rel, Armbrecht* v. *Thornburg*, 137 W. Va. 60, 70 S. E. 2d 73.

The allegations of the plea in abatement do not sustain

the second ground relied on that the act is unconstitutional because House Bill No. 189 was not presented to the Governor in the manner required by Article VII, Section 14, of the Constitution. That section provides: "Every bill passed by the Legislature shall, before it becomes a law, be presented to the Governor. If he approve, he shall sign it, and thereupon it shall become a law; but if not, he shall return it, with his objections, to the House in which it originated, which House shall enter the objections at large upon its journal, and proceed to reconsider it. If, after such reconsideration, a majority of the members elected to that House, agree to pass the bill, it shall be sent, together with the objections to the other House, by which it shall likewise be reconsidered, and if approved by a majority of the members elected to that House, it shall become a law, notwithstanding the objecttions of the Governor. But in all such cases, the vote of each House shall be determined by yeas and nays to be entered on the journal. Any bill which shall not be returned by the Governor within five days (Sundays excepted) after it shall have been presented to him, shall be a law, in like manner as if he had signed it, unless the Legislature shall, by their adjournment prevent its return, in which case it shall be filed with his objections in the office of the Secretary of State, within five days after such adjournment, or become a law." These provisions are, of course, mandatory. *Charleston National Bank* v. *Fox,* 119 W. Va. 438, 194 S. E. 4; *Capito* v. *Topping,* 65 W. Va. 587, 64 S. E. 845, 22 L. R. A., N. S., 1089.

It is pertinent to observe that the first sentence of the foregoing section which requires every bill passed by the Legislature to be presented to the Governor before it becomes a law, prescribes no time within which it must be so presented. The first part of the second sentence of the section declares that, if the Governor approves the bill, he shall sign it and that when he does so it shall become a law. The section does not say that a bill after its passage must be presented to the Governor before the Legislature adjourns, and it does not require the Governor, at any time

or within any specified period of time, to return to either House of the Legislature, or to file in the office of the Secretary of State, any bill presented to him which he approves and signs. The first two sentences of the section in effect declare that when the Governor approves and signs a bill presented to him after its passage such bill shall become a law; and no additional requirement to make such law effective is expressly specified or imposed by those sentences or by any other provision of the section.

The remaining portions of the section relate to the procedure to be followed by the Governor and the two Houses of the Legislature when the Governor does not approve the bill and exercises his power to veto legislation which he disapproves and do not apply to his power to approve legislation with which he agrees or to which he does not object. Under the provisions of those portions of the section, if he would defeat an act of the Legislature by the exercise of his veto power, he must return it, with his objections, to the House in which it originated within five days (Sundays excepted) after it has been presented to him unless the Legislature by its adjournment prevents its return. If the Legislature has adjourned, he must file it with his objections in the office of the Secretary of State within five days, Sundays excepted, after such adjournment. *Capito* v. *Topping,* 65 W Va. 587, 64 S. E. 845, 22 L. R. A., N. S., 1089. If the Governor does not take the designated action in the particular circumstance in which such action is required his power to veto such bill becomes ineffective and it becomes a law in like manner as if he had signed it.

The provisions of Article VII, Section 14, of the Constitution were not designed or intended to prevent the Governor from agreeing with the Legislature or to defeat an act passed by the Legislature and approved by the Governor. Though there appears to be no decision of this Court on the question of the time within which a bill, after its passage must be presented to the Governor and, if approved, signed by him, in some jurisdictions in which constitutional provisions substantially similar to those of

Article VII, Section 14, of the Constitution of this State exist, it has been held that a bill passed by the Legislature may be presented to the Governor and signed by him after the Legislature has adjourned, *Lankford* v. *County Commissioners of Somerset County,* 73 Md. 105, 20 A. 1017, 22 A. 412, 11 L. R. A. 491; *People ex rel. Akin* v. *Rose,* 167 Ill. 147, 47 N. E. 547; *Dow* v. *Beidleman,* 49 Ark. 325, 5 S. W. 297; that a bill presented to the Governor while the Legislature is in session may be signed by him after the Legislature has adjourned if he signs it within a designated period of time after it is presented to him, *Town of Seven Hickory* v. *Ellery,* 13 Otto 423, 103 U. S. 423, 26 L. Ed. 435; *People* v. *Bowen,* 30 Barb. 24, 21 N. Y. 517; *State of Mississippi* v. *Supervisors of Coahoma County,* 64 Miss. 358, 1 So. 501; *State* v. *Fagan,* 22 La. Ann. 545; and that the designated period of time within which the Governor may return a bill with his disapproval after it is presented to him, being a privilege accorded to enable him to consider it, may be shortened by him and the bill returned before the expiration of such period. *Hunt* v. *State,* 72 Ark. 241, 79 S. W. 769, 65 L. R. A. 71, 105 Am. St. Rep. 34, 2 Ann. Cas. 33.

In *Lankford* v. *County Commissioners of Somerset County,* 73 Md. 105, 20 A. 1017, 22 A. 412, 11 L. R. A. 491, the Court of Appeals of Maryland held, two judges dissenting, that, under the Constitution of that State which provides that "every bill which shall have passed the House of Delegates and the Senate shall, before it becomes a law, be presented to the Governor of the State; if he approve, he shall sign it; but if not, he shall return it, with his objections, to the House in which it originated, which House shall enter the objections at large on its journal, and proceed to reconsider the bill; * * *. If any bill shall not be returned by the Governor within six days, (Sundays excepted,) after it shall have been presented to him, the same shall be a law in like manner as if he signed it; unless the General Assembly shall, by adjournment, prevent its return, in which case it shall not be a law.", a bill regularly passed and sealed could be pre-

sented to the Governor and signed by him after the session of the Legislature had closed, if the bill was signed by the Governor within six days after it had been presented to him for approval. In that case the concurring opinion of Justice Bryan contains this pertinent language:

"The requisites to the validity of statutes are prescribed by section thirty of the third Article of the Constitution. When passed by the General Assembly, they are to be sealed with the Great Seal and presented to the Governor; if he approves them, he is required to sign them in the presence of presiding officers and chief clerks of the Senate and House of Delegates. The Constitution requires nothing more to be done in order to give operation and effect to laws. No time is limited by the section in question for presentation to the Governor, or for his signature in case of approval. It is not said that the presentation and signature shall take place during the session; nor is it said that they shall be consummated within a specified time after its determination. * * *. When he approves it, he has nothing to do but to sign it in the presence of the designated officers. * * *. It will be observed that nothing whatever is said about his approval of an Act of Assembly except as introductory to the grant of the veto power. And nowhere in the Constitution, when the Governor approves a bill, is he required to do anything more than to sign it.

"It has been suggested that unless some period is fixed within which the Governor is obliged to sign bills, he might retain them for an indefinite time, and cause great public inconvenience by the delay. It may be answered that all public officers are bound to perform their duties with promptness and diligence. * * *. We must never forget that in sustaining a law which has been signed by the Governor, we are giving effect to legislation which has received the sanction of all branches of the law-making power. The Constitution has provided for defeating an Act of Assembly when the Governor disagrees with the two Houses of the Legislature; but where they all agree, it contains no provisions for defeating their united will. The veto power has usually been regarded

with jealously, and is restricted within well defined limits; but there is no restraint on the Governor's right to agree with the Legislature. That has never been considered as a danger to be guarded against. * * *."

In the case of *Amos* v. *Gunn*, 84 Fla. 285, 94 So. 615, the Supreme Court of Florida, by a divided court, held, contrary to the holding of the Maryland court in the *Lankford* case, that presentation to the Governor of a bill passed by the legislature may be made only while the legislature is in session, and its decision on that question was approved and reaffirmed in the later case of *State ex rel. Cunningham* v. *Davis*, 123 Fla. 41, 166 So. 289, also by a divided court. In *Solomon* v. *The Commissioners of Cartersville*, 41 Ga. 157, the Supreme Court of Georgia held that a bill passed March 16, 1869, two days before the legislature adjourned on March 18, 1869, which was not approved by the governor until May 29, 1869, was not lawfully approved and for that reason did not become a law of that State. Though the *Gunn* and the *Cunningham* cases and the *Lankford* case are not binding but merely persuasive authority, this Court is of the opinion that the *Lankford* case announces the sound rule on the question whether, under similar pertinent constitutional provisions, a bill must be presented to the governor while the legislature is in session or may be presented after the session has adjourned, and follows the holding of the *Lankford* case on that point for the reasons stated in the foregoing quotations from the concurring opinion of Justice Bryan in that case.

In *Town of Seven Hickory* v. *Ellery*, 13 Otto 423, 103 U. S. 423, 26 L. Ed. 435, the Supreme Court of the United States, considering Article IV, Section 21, of the Constitution of Illinois which in its pertinent provisions is identical with the provisions of Article VII, Section 14, of the Constitution of this State, except that the time within which the Governor must return a bill disapproved by him is ten days, instead of five days (Sundays excepted), after it has been presented to him, held that a bill passed by the Legislature of that State, which was presented to the

Governor before the Legislature adjourned, became a law when signed by the Governor after the session of the Legislature had terminated but within ten days from the time it was presented to him. In the opinion the Court said: "The single question we now have to consider is whether a bill passed by both Houses, and presented to the Governor before the legislature adjourns, becomes a law when signed by the governor after the session of the legislature has been terminated by an adjournment, but within ten days from its presentation to him. We have no hesitation in saying that it does. There is certainly no express provision of the Constitution to the contrary. All that instrument requires is that, before any bill, which has passed the two Houses, can become a law, it shall be presented to the governor. If he approves it, he may sign it. If he does sign it within the time, the bill becomes a law. That is not said in so many words, but is manifestly implied. After a bill has been signed, the legislature has nothing more to do with it. Undoubtedly, if the legislature should be in session when the signing is done, it would not be inappropriate for the governor to communicate his approval to one or both the Houses; but there is nothing in the Constitution which requires him to do so. The filing of the bill by the governor in the office of the secretary of state with his signature of approval on it is just as effectual in giving it validity as a law, as its formal return to the legislature would be. The bill becomes a law when signed. Everything done after that is with a view to preserving the evidence of its passage and approval."

Under a constitutional provision somewhat similar to that contained in Article VII, Section 14, of the Constitution of this State, the Supreme Court of Mississippi, in *State of Mississippi* v. *Board of Supervisors of Coahoma County*, 64 Miss. 358, 1 So. 501, held that a bill which had passed both Houses of the Legislature and had been presented to the Governor two days after its passage and before the session of the Legislature had adjourned could be validly signed after the termination of the session, when

the Legislature had adjourned before the expiration of the five day period allowed him after presentation of the bill in which to approve or veto the bill. In the opinion the Court said: "No time is prescribed by the constitution in which the governor shall sign if he approve. * * *. If he signs he converts the bill into law by his signing. He may inform the legislature or either house of the fact that he has signed, but he need not do this. It is a mere courtesy. His signing makes the bill a law, and its validity does not depend on his making any communication to the legislature or either house on the subject. If he disapproves a bill he must return it with his objections, but if he approves he is to sign it, and need never communicate with either house on the subject. The finishing act by which a bill is transformed into a law is the governor's approval as shown by his signing, and that may be as long as he has the bill in his hands for his official action. So long as he may return it with his objections he may convert the bill into a law by his approval and signing. So long as he may disapprove and return the bill with his objections he may assent to the expressed will of the two houses, and as governor unite with the legislature in passing a bill into a law."

Whether, under Article VII, Section 14, of the Constitution of this State, the period of five days after a bill has been presented to the Governor within which he may return a bill which he disapproves to the House in which it originated, or, if the Legislature has adjourned, file it in the office of the Secretary of State, within five days after such adjournment, by necessary implication, constitutes the period within which he may sign a bill which he approves, a question which need not be, and is not now, decided, the allegations of the plea in abatement, the journal of the House of Delegates, and the other legislative records of which this court takes judicial notice show beyond question that House Bill No. 189, after its passage, was presented to the Governor and signed by him and filed in the office of the Secretary of State on March 16, 1951, which was within five days, excluding Sunday, March 11, 1951, after the Legislature adjourned, according to the

journal of each house. If the Governor had decided to veto the act, instead of approving and signing it, he could have done so by disapproving it and filing it, with his objections, in the office of the Secretary of State on March 16, 1952, which was within five days, excluding Sunday, March 11, 1952, after the Legislature had adjourned. As he filed it within the period of five days, however, with no objections, it would have become a law even if he had not signed it and, if he had not filed it within that period, even though he had disapproved it with his objections, it would have become a law. As he approved and signed it, however, and caused it to be filed in the office of the Secretary of State on the day it was presented to him, and as the Constitution does not prescribe any time within which it must, after its passage, be presented to him, the manner in which it was presented to him, approved and signed by him, and filed of record, did not violate any provision of the Constitution; and the constitutionality of the act which he so approved and signed can not be successfully assailed on the ground that the applicable provisions of Article VII, Section 14, of that instrument have not been complied with or satisfied.

The case of *Charleston National Bank* v. *Fox,* 119 W. Va. 438, 194 S. E. 4, cited and relied on by the defendant to sustain his contention that House Bill No. 189 was not presented to the Governor and signed by him in the manner required by Article VII, Section 14, of the Constitution of this State, is distinguishable from the case at bar. In that case a bill other than the one passed by the Legislature was presented to the Governor but the bill actually passed was not so presented. The bill passed by the Legislature but which was never presented to the Governor was, for that reason, held to be unconstitutional. In the case at bar, it is not disputed that the bill here under attack was actually presented to the Governor and approved and signed by him on March 16, 1951. Though the journal of the House of Delegates, under the date of March 10, 1951, shows that House Bill No. 189 was approved and signed by the Governor on March 16, 1951, and in that particular

presents an ambiguity or a conflict in the journal entry as to the date it was approved and signed, that ambiguity or conflict is of no importance in relation to the time of presentment, approval and signing for the reason, heretofore pointed out, that the presentment of the bill and the action of the Governor in approving and signing it on March 16, 1951, did not disregard any requirement or contravene any provision of Article VII, Section 14, of the Constitution of this State.

The principal contention of the defendant to sustain the third ground of attack upon the constitutionality of the act, set forth and relied upon in the plea in abatement, is that Subsection (b) of Section 1, and Subsections (a), (b) and (c) of Section 11, Article 17, Chapter 17-C, of Chapter 129, Acts of the Legislature, 1951, Regular Session, which while pending in the Legislature was designated as Engrossed House Bill No. 189, contain certain discriminatory, unreasonable and arbitrary provisions which invalidate the entire act.

Subsection (a), Section 1, Article 17, dealing with the scope of that article, provides that it shall be unlawful for any person to drive or move, or for the owner, the lessee or the borrower, to cause or knowingly to permit to be driven or moved, on any highway, any vehicle or vehicles which in size and weight exceed the limitations stated in the article; that the maximum size and weight of vehicles, as specified in the article, shall be lawful throughout the State; that local authorities shall have no power or authority to alter the limitations imposed except as expressly granted in the article; and that violation of the section shall constitute a misdemeanor. Subsection (b), Section 1, then states this exemption from certain provisions of the article: "The provisions of this article governing size, weight, and load shall not apply to fire apparatus, road machinery, or to implements of husbandry, including farm tractors, temporarily moved upon a highway, or to a vehicle operated under the terms of a special permit issued as herein provided."

Subsection (a), (b) and (c), Section 11, relate to per-

mits for excess size and weight of certain vehicles which may be issued by the state road commissioner for different periods of time upon specified terms and conditions and subsection (a) also contains this language: *"Provided, however,* That specially designed vehicles which can only be used to transport and haul specific liquid or semi-liquid products shall be exempt from the provisions of this chapter, relating to weight limitations, during the life of such vehicles: *Provided further,* That this exemption shall only apply to vehicles registered in this State prior to the effective date of this chapter. In order for this exemption to apply the owner or operator shall apply for and the state road commissioner shall issue a permit for such vehicle allowing such owner or operator to use the same upon the roads and highways of this state for the life of such vehicle."

Section 1, Article 21, Chapter 17-C provides: "If any part or parts of this chapter shall be held to be unconstitutional such unconstitutionality shall not affect the validity of the remaining parts of this chapter. The legislature hereby declares that it would have passed the remaining parts of this chapter if it had known that such part or parts thereof would be declared unconstitutional." An identical provision appears in each of the other two chapters, Chapter 17-A and Chapter 17-B, of the act.

A statute may contain constitutional and unconstitutional provisions which may be perfectly distinct and separable so that some may stand and the others will fall; and if, when the unconstitutional portion is rejected, the remaining portion reflects the legislative will, is complete in itself, is capable of being executed independently of the rejected portion, and in all other respects is valid, such remaining portion will be upheld and sustained. *Meisel* v. *Tri-State Airport Authority,* 135 W. Va. 528, 64 S. E. 2d 32; *Lingamfelter* v. *Brown,* 132 W. Va. 566, 52 S. E. 2d 687; *The County Court of Raleigh County* v. *Painter,* 123 W. Va. 415, 15 S. E. 2d 396; *Prichard* v. *De Van,* 114 W. Va. 509, 172 S. E. 711; *Fairmont Wall Plaster Company* v. *Nuzum,* 85 W. Va. 667, 102 S. E. 494; *State ex rel. Dillon* v. *County*

*Court of Braxton County,* 60 W. Va. 339, 55 S. E. 382; *People ex rel. Stuckart* v. *Knopf,* 183 Ill. 410, 56 N. E. 155; *Loeb* v. *Trustees of Columbia Township,* 179 U. S. 472, 21 S. Ct. 174, 45 L. Ed. 280; *Berea College* v. *Commonwealth of Kentucky,* 211 U. S. 45, 29 S. Ct. 33, 53 L. Ed. 81; 11 Am. Jur., Constitutional Law, Section 152; Cooley, Constitutional Limitations, Eighth Edition, Vol. I, p. 361.

In *Lingamfelter* v. *Brown,* 132 W. Va. 566, 52 S. E. 2d 687, though the statute there under consideration was held to be unconstitutional in its entirety because a provision levying a tax, being invalid, the remaining provisions were of no force or vitality, this Court referring to the rule applicable to a statute containing distinct and separable provisions some of which are constitutional and others of which are unconstitutional, said: "In the case of *Loeb* v. *Trustees of Columbia Township,* 179 U. S. 472, 45 L. ed. 280, 21 S. Ct. 174, 181, the applicable rule is stated as follows: 'One part [of a statute] may stand, while another will fall, unless the two are so connected, or dependent on each other in subject matter, meaning, or purpose, that the good cannot remain without the bad. The point is not whether the parts are contained in the same section, for the distribution into sections is purely artificial, but whether they are essentially and inseparably connected in substance,—whether the provisions are so interdependent that one cannot operate without the other.' See *Shulman Co.* v. *Sawyer,* (Va.), 189 S. E. 344; 11 Am. Jur., Constitutional Law, Section 156; 6 R. C. L., Constitutional Law, Section 121. If the other parts of a statute are not dependent upon the void part, the valid portions of the statute may remain in force. *County Court* v. *Painter,* 123 W. Va. 415, 15 S. E. 2d 396; *Berea College* v. *Kentucky,* 211 U. S. 45, 53 L. ed. 81, 29 S. Ct. 33."

In *State ex rel. Dillon* v. *County Court of Braxton County,* 60 W. Va. 339, 55 S. E. 382, a statute which limited the amount of taxes to be levied and collected by county courts contained a proviso which expressly exempted the counties of McDowell and Gilmer from the limitation. The exemption was advanced as one ground of attack upon

the constitutionality of the statute. In rejecting the contention that the exemption rendered the statute invalid this Court said: "We have no doubt that the exception at the end of the proviso, designed to preclude its operation in McDowell and Gilmer counties can be stricken out without affecting the validity of the proviso itself. Upon striking it out, the language of all that remains will apply to all the counties in the State. When a statute, containing an invalid clause, is so framed that elimination of said clause leaves the residue of it in such form that, if it had been so passed originally, it would have been a complete and valid statute, courts do not declare the entire statute void because of the insertion of the illegal exception. They cut out the exception and uphold the act from which it is eliminated. But for the exception the terms of the act would expressly embrace every county in the State. The exception is an attempt to withdraw from its influence two counties."

In *Prichard* v. *De Van*, 114 W. Va. 509, 172 S. E. 711, this Court held in point 5 of the syllabus that "When a part of an Act is invalid but the remainder reflects the legislative intent and is complete in itself, then the remainder will be upheld."

The principle, as stated in 11 Am. Jur., Constitutional Law, Section 152, is "that a statute may be constitutional in one part and unconstitutional in another part and that if the invalid part is severable from the rest, the portion which is constitutional may stand while that which is unconstitutional is stricken out and rejected."

It is evident that the Legislature intended the various provisions of the act to be considered as distinct and separable and that, if any part of the act should be declared unconstitutional, the Legislature would have passed the remaining parts of the act. The act so declares in each of its three separate chapters; and the saving clause contained in the provisions of each chapter, being an "aid in determining legislative intent", *Hodges* v. *Public Service Commission*, 110 W. Va. 649, 159 S. E. 834, and an expres-

sion of the will of the Legislature, though not "an inexorable command", is generally carried into effect by the courts. 11 Am. Jur., Constitutional Law, Section 156.

It is equally clear that the challenged provisions of Subsection (b) of Section 1, and of Subsections (a), (b) and (c) of Section 11, of Article 17, are distinct and separable from other parts of the act. If any or all the challenged provisions had been omitted when the act was passed it would be a complete statute. None of the other provisions is so connected with, or dependent on, the other challenged provisions of the act in subject matter, meaning or purpose, that the other provisions could not remain or be operative without the challenged provisions. If the exemption provisions, which do not apply to or invade any right of the defendant who is not within any of those provisions, and the provisions authorizing the state road commissioner to issue permits in the designated instances and upon the specified terms and conditions, were eliminated from the act the remaining parts of the act would constitute a complete statute which would express the legislative will independently of any or all of those particular provisions.

Whether the provisions of Subsection (b) of Section 1, and of Subsections (a), (b) and (c) of Section 11, of Article 17, the validity of which is challenged by the defendant, are invalid need not be, and is not, decided. A court will not pass upon the constitutionality of challenged provisions of a statute unless a decision upon that specific point is necessary to a determination of the case. See *Simms* v. *County Court of Kanawha County,* 134 W. Va. 867, 61 S. E. 2d 849; *Lingamfelter* v. *Brown,* 132 W. Va. 566, 52 S. E. 2d 687; *State* v. *Harrison,* 130 W. Va. 246, 43 S. E. 2d 214; *State* v. *Garner,* 128 W. Va. 726, 38 S. E. 2d 337; *Norris* v. *County Court of Cabell County,* 111 W. Va. 692, 163 S. E. 418; *State* v. *Jackson,* 95 W. Va. 365, 121 S. E. 162; *Ice* v. *County Court of Putnam County,* 91 W. Va. 272, 112 S. E. 495; *State* v. *McCoy,* 91 W. Va. 262, 111 S. E. 125; *Edgell* v. *Conaway,* 24 W. Va. 747. Even if the challenged pro-

visions could be said to be invalid, they do not affect or vitiate the remainder of the act or render the act invalid.

As the plea in abatement does not state a valid defense to the indictment, and as the constitutionality of the statute on which it is based can not be successfully assailed on any of the three grounds asserted and relied upon in that pleading, the demurrer of the State to the plea in abatement should have been sustained.

The judgment of the criminal court quashing the indictment and discharging the defendant and the judgment of the circuit court affirming the judgment of the criminal court, being erroneous, are reversed; and this case is remanded to the Criminal Court of Marion County for further proceedings in conformity to the principles enunciated in this opinion.

*Reversed and remanded.*