CHARLESTON NATIONAL BANK *et al.*, EXECUTORS, *v.* FRED L. FOX, STATE TAX COMMISSIONER, ERNEST K. JAMES, ACTING COMMISSIONER

(No. 8565)

Submitted September 21, 1937. Decided November 23, 1937.

*Brown, Jackson & Knight* and *C. W. Moxley,* for defendants in error.

*Chas. N. Kimball* and *W. J. Brennan,* amici curiae.

*Clarence W. Meadows*, Attorney General, and *Forrest B. Poling*, Assistant Attorney General, for plaintiff in error.

RILEY, JUDGE:

This case is here on writ of error to a judgment of the Circuit Court of Kanawha County entered on December 30, 1936, ordering the State Tax Commissioner to refund to the executors of Frank Cox, deceased, the sum of $11,-037.38 as an overpayment of the state inheritance tax due upon the estate of their decedent. The case originated in the office of the State Tax Commissioner when the executors filed a petition under the provisions of Chapter 87, Acts of the Legislature, Regular Session, 1935. To a ruling of the commissioner refusing a refund, a writ of certiorari was sued out in the circuit court. The whole procedure depends upon the validity of the enactment of that chapter, and therefore, if it be determined that the chapter was not validly enacted, the petition must be dismissed.

The serious question as to the validity of the enactment of this chapter depends upon whether or not the bill passed by both houses of the Legislature was presented to the Governor within the time required by the Constitution. There is no reason for concern with the procedure in the Legislature.

From the journals of the two Houses, it appears that chapter 87 originated in the Senate as Senate Bill No. 291, was introduced by Senator Hodges, by request, and was passed by that body to take effect from passage. The action of the Senate was reported to the House of Delegates, and on March 9, 1935; the House passed the same measure to be effective from passage. The Joint Committee on Enrolled Bills reported to the Senate and the House on March 11, 1935, that "S. B. 291" (Senate Bill No. 291, the report giving only the title of the bill) had been presented to the Governor for his action thereon. The Legislature adjourned the same day.

In the office of the Secretary of State, there is on file a duly enrolled bill, authenticated by the signatures of the

chairman of the House Committee and the chairman of the Senate Committee, the two committees composing the Joint Committee on Enrolled Bills, and the signatures of the President of the Senate and the Speaker of the House. The certificate of the clerks of the two Houses, signed by both, is affixed showing that the bill originated in the Senate and takes effect from passage. These actions fulfill the requirements of section 17 of the Joint Rules. To this bill is affixed the certificate required by section 18 of the Joint Rules, in case the bill becomes a law without the Governor's approval, as follows:

"I certify that the foregoing act, having been presented to the Governor for his approval, and not having been returned by him to the House of the Legislature in which it originated within the time prescribed by the Constitution of the State, has become a law without his approval."

The latter certificate is signed by William S. O'Brien, Secretary of State, and bears date March 15, 1937. In addition, this bill is stamped, "Filed in the office of the Secretary of State of West Virginia March 15, 1935," which stamp is also signed by the Secretary of State. The Legislature did not pass this bill.

A copy of the bill passed by the Legislature is in the office of the Secretary of State, but it does not have on it any authenticating signatures or the stamp required to be affixed by the Joint Rules in case the bill becomes a law without the Governor's approval. Only these words, typewritten in parenthesis at the top, appear thereon: "Re-Enrolled: Substituted for former bill." There is also clipped to it, by an ordinary paper clip, a memorandum paper which has on it the following words: "Journal of The Senate Regular Session 1935 page 967."

The heading of the latter bill, except the marking therein of its effective date, is identical through the enacting clause with the bill passed by the Senate and the House. The difference is in the body of the act, and probably arose from the fact that an amendment was adopted after the bill was reported out of the Senate Finance Committee. This, however, is mere conjecture.

The substantive provisions of the enrolled bill in the Secretary of State's office and that passed by the Legislature differ materially. It is needless to set out their provisions here.

There are duly enrolled copies of both bills on file in the records of the Clerk of the House of Delegates. The only difference disclosed in the headings of the two bills, as enrolled, is that the bill passed by the Legislature has in its heading the words, "Effective from passage", while the bill in the Secretary of State's office, has in its heading the words, "Effective ninety days from passage." The record book of all bills presented to the Governor for his approval, belonging to the Joint Committee on Enrolled Bills and required to be kept by section 17 of the Joint Rules, which is a receipt book signed by the Governor, shows that the bill presented to him was a bill to be effective ninety days from passage, and was presented to him on March 11, 1935. The record is composed of clipped headings of printed bills pasted to a sheet of the book, and the receipt of the Governor is written across the heading in his own handwriting, states the date of delivery of each bill, and is signed by him. There is no other receipt for the 1935 Regular Session for a Senate Bill 291 in this book.

The Governor's record of bills presented to him for the 1935 session shows that Senate Bill No. 291, "Relating to the refunding of excess payment of taxes," the sponsor of whom was Senator Hodges, was received March 11, 1935, was not approved or vetoed by him, was filed March 15, 1935, with the Secretary of State, and that the effective date of this bill was to be ninety days from passage. This record does not show the presentment of any other Senate Bill 291 of that session. Although there is no provision of law requiring the keeping of this record, it has been kept in its present form for many years.

On the basis of these facts, it is contended on behalf of the Tax Commissioner that the bill known as Senate Bill No. 291, which was actually passed by the Legislature, was not presented to the Governor, but that the bill presented to the Governor was a different one and had not been passed by the Legislature. The defendants in error,

on the other hand, contend that there is a strong presumption that a bill which appears in the published acts has been passed by the Legislature and presented to the Governor and that all the necessary steps for the valid enactment of such a bill have been taken. They also contend that there is no provision of law requiring the keeping of the hereinbefore mentioned records, and that therefore they are not entitled to sufficient credit to overthrow this presumption.

The clerk of the House is the keeper of the rolls. He has custody of the acts of the Legislature, and the duty of furnishing the manuscript for the printed acts to the printer. Code, 4-1-13. The printed acts are presumed to be valid enactments. *State* v. *Groves,* 80 Ohio St. 351, 88 N. E. 1096, 17 Ann. Cas. 361; *Helena Water Co.* v. *City of Helena,* 140 Ark. 597, 216 S. W. 26; *Baltimore, etc., Co.* v. *Canton Lumber Co.,* 118 Md. 135, 84 A. 188. But the strongest presumption is in favor of a bill that has been duly enrolled and bears thereon evidence of the executive's action in regard to it. *Anderson* v. *Bowen,* 78 W. Va. 559, 89 S. E. 677. If there is a variance between the printed acts and the enrolled bill, the enrolled bill controls. *Combs* v. *City of Bluefield,* 97 W. Va. 395, 125 S. E. 239; *State* v. *Groves,* 80 Ohio St. 351, 88 N. E. 1096, 17 Ann. Cas. 361. Whether the authentication of an enrolled bill is a verity precluding question is in conflict in other jurisdictions. In this state, the law is well settled that it is not. *Osburn* v. *Staley,* 5 W. Va. 85, 13 Am. Rep. 640; *Price* v. *City of Moundsville,* 43 W. Va. 523, 27 S. E. 218, 64 Am. St. Rep. 878; *Anderson* v. *Bowen,* 78 W. Va. 559, 89 S. E. 677. We are therefore not concerned with the sharp split in the authorities over this question. That authentication does not preclude question, see *Bowman* v. *Va. State Entomologist,* 128 Va. 351, 105 S. E. 141, 12 A. L. R. 1121; *Board of Supervisors of Ramsey County* v. *Heenan,* 2 Minn. 330; *People ex rel. Hart* v. *McElroy,* 72 Mich. 446, 40 N. W. 750, 2 L. R. A. 609; *Jones* v. *Jones,* 12 Pa. St. 350, 51 Am. Dec. 611, and note; *In re Opinion of the Justices,* 76 N. H. 601, 81 A. 170; *Baltimore, etc., Co.* v. *Canton Lumber Co.,* 118 Md. 135, 84 A. 188; *Helena Water Co.* v. *City of Helena,* 140 Ark. 597, 216 S. W.

26; *Currie* v. *Southern Pac. Co.*, 21 Ore. 566, 28 P. 884, 885; *Palatine, etc., Co.* v. *Northern Pac. Ry. Co.*, 34 Mont. 268, 85 P. 1032, 9 Ann. Cas. 579; 25 R. C. L. 146; 59 C. J. 589. Contra, *State* v. *Jones,* 6 Wash. 452, 34 P. 201, 23 L. R. A. 340, and note; *Field* v. *Clark,* 143 U. S. 649, 699, 12 S. Ct. 495, 36 L. Ed. 294; *In re Opinion of the Judges,* 43 S. D. 648, 180 N. W. 957; 25 R. C. L. 150; 59 C. J. 590. The presumption, in favor of the validity of a statute duly authenticated, though strong, is not irrebutable and may be overcome by clear and convincing proof.

Article VII, Section 14 of the Constitution of West Virginia, provides:

"Every bill passed by the Legislature shall before it becomes a law, be presented to the Governor. If he approves, he shall sign it, and thereupon it shall become a law; but if not, he shall return it with his objections, to the House in which it originated, which House shall enter the objections at large upon its journal, and proceed to reconsider it. If, after such reconsideration, a majority of the members elected to that House agree to pass the bill, it shall be sent, together with the objections to the other House, by which it shall likewise, be reconsidered, and if approved by a majority of the members elected to that House, it shall become a law, notwithstanding the objections of the Governor. But in all such cases, the vote of each House shall be determined by yeas and nays to be entered on the journal. Any bill which shall not be returned by the Governor within five days (Sundays excepted) after it shall have been presented to him shall be a law, in like manner as if he had signed it, unless the Legislature shall, by their adjournment prevent its return, in which case it shall be filed with his objections in the office of the Secretary of State, within five days after such adjournment, or become a law."

There is no other provision of the Constitution, or of the Code, relating to action by the Governor on bills presented to him for consideration. This constitutional pro-

vision clearly requires presentment of a bill passed by the Legislature to the Governor before it shall become a law. The provisions of this section are mandatory. *Capito* v. *Topping,* 65 W. Va. 587, 64 S. E. 845, 22 L. R. A. (N. S.) 1089. The language of Article VII, Section 14, requires that bills "be presented to the Governor," thus allowing no other interpretation than that such presentment is to be done pursuant to such rules as the Legislature shall fix for this procedure. In so far as *Capito* v. *Topping, supra,* might indicate otherwise, it is disapproved.

The only hiatus left in an available record under our Constitution and statutes as to the Governor's action on a bill is when it becomes a law without his signature and is not passed over his veto. Is the question of presentment to the Governor and his permitting a bill to become a law without his signature to be left to the attestation of the clerk of the House as evidenced by the printed acts, or do the courts, when called upon to enforce a purported statute, have a right and duty, *ex mero motu,* to determine the existence of this fact? We think such right and duty exist.

What form of evidence as to presentment to the executive is to be given credence against the presumption in favor of the enactment of a duly authenticated statute? Some courts hold that parol evidence may be used. *Fowler* v. *Peirce,* 2 Cal. 165; *Gardner* v. *The Collector,* 6 Wall. (73 U. S.) 499, 18 L. Ed. 890. See, however, *Parkinson* v. *Johnson,* 160 Cal. 756, 117 P. 1057. Other courts refuse such evidence. *Booe* v. *Improvement Dist.,* 141 Ark. 140, 216 S. W. 500; *Wrede* v. *Richardson,* 77 Ohio St. 182, 82 N. E. 1072, 122 Am. St. Rep. 498; *State* v. *Joseph,* 175 Ala. 579, 57 So. 942, Ann. Cas. 1914D, 248, and note. But we believe an answer to this question is very aptly stated in 15 R. C. L. 1066:

> "Naturally the laws of a state are judicially noticed by the courts of that state, for such is the purpose of their existence, and it is immaterial whether the law in question be written or unwritten. Every fact upon which, in any view,

depends the question whether a document purporting to be a statute has, by legislative action, been invested with the force of law, is, in its nature, a public fact and will be noticed by the court in determining what is and what is not the law of the state. So the time when a public statute of the state takes effect and becomes a law, and whether it exists as law at any particular time, is a matter of judicial notice with the courts of the state."

The application of the principles of judicial notice is elaborated on in *Gardner* v. *The Collector*, 6 Wall. (73 U. S.) 499, 511, 18 L. Ed. 890, as follows:

"We are of opinion, therefore, on principle as well as authority, that whenever a question arises in a court of law of the existence of a statute, or of the time when a statute took effect, or of the precise terms of a statute, the judges who are called upon to decide it, have a right to resort to any source of information which in its nature is capable of conveying to the judicial mind a clear and satisfactory answer to such question; always seeking first for that which in its nature is most appropriate unless the positive law has enacted a different rule."

We are aware of the fact that the United States Supreme Court has held in a subsequent case that the authentication of an act of Congress is a verity. *Field* v. *Clark*, 143 U. S. 649, 699, 12 S. Ct. 495, 36 L. Ed. 294. But the question as to the presentment of an act to the President, which was the question involved in the *Gardner* case, was not considered.

Under the authorities and in sound logic, when a bill, passed by the Legislature, is printed in the acts as having become a law without the signature of the Governor, this Court will take judicial notice of such facts as will enable it to determine the question of its presentation to the Governor. In pursuing this inquiry, judicial notice will be taken of the records of the offices of the Governor, Secretary of State and clerks of both the Senate and House of

Delegates. In addition, a consideration of the constitutional and statutory provisions relating to the enactment of laws will furnish a key to clearly answer the question of what bill was presented to the Governor.

Article VI, Section 24 of the Constitution provides:

> "Each House shall determine the rules of its proceedings and be the judge of the election returns and qualifications of its own members. The Senate shall choose, from its own body, a President; and the House of Delegates, from its own body, a Speaker. Each House shall appoint its own officers, and remove them at pleasure."

This provision, in itself, is authorization, if any be needed, for the enactment of the Joint Rules, the pertinent provisions of which have been mentioned. These rules were adopted by the Senate and House, separately, on the 21st day of January, 1935.

Section 10, article 1, chapter 4 of the Code provides:

> "The officers of each house shall respectively have such powers and perform such duties as are conferred upon or required of them by law, or by the rules or orders of their respective houses."

In the light of the foregoing constitutional and statutory provisions and the requirement of Article VII, Section 14 of the Constitution, we believe that we are entitled to look to the requirements of the Joint Rules of the Legislature as to the handling of bills when they are presented to the Governor in determining what bills have been presented to him.

The facts in regard to Senate Bill 291 thus become clear because of the statement in the heading of the two printed enrolled bills purporting to be Senate Bill 291, as to their effective date. The record book of the Committee on Enrolled Bills shows that the bill presented to the Governor was to become effective ninety days from passage, and that it was presented to him on March 11, 1935. Pursuing the disposition of this same bill, as provided by the Joint Rules and as shown by the Governor's

record, we find a duly enrolled bill in the office of the Secretary of State, stamped by the Secretary of State as having been presented to the Governor and as having become a law without his signature, to be effective ninety days from passage, which is a bill that was not passed by the Legislature. (The presence of such a bill in the office of the Secretary of State, when made a depository therefor by statute, has been held conclusive as to presentation of the wrong bill. *State* v. *City of Salina,* 108 Kan. 271, 194 P. 931). The journal of each House shows that an enrolled Senate Bill 291 was presented to the Governor on March 11th, and the Governor's record, as well as the record of the Committee on Enrolled Bills, coincides therewith. Neither the journals nor the other records, show the presentment of any other Senate Bill 291 to the Governor at any time. The Secretary of State is keeper of the executive records (Code, 5-2-1), and the finding of a duly enrolled bill in his office with his stamp of receipt thereon would, in itself, be entitled to weight in determining the terms of a bill presented to the Governor. We think these things show, beyond a reasonable doubt, that the bill passed by the Legislature was not presented to the Governor, which omission is fatal to the bill. *State* v. *Wisconsin, etc., Examiners,* 172 Wis. 317, 177 N. W. 910; *Peoples* v. *Lueders,* 283 Ill. 287, 119 N. E. 339; Constitution, Article VII, Section 14.

The fact that the bill was filed by the Governor with the Secretary of State before the expiration of five days from the time he received it is immaterial, since the Secretary of State affixed the certificate thereto showing the Governor's intention. *Hunt* v. *State,* 72 Ark. 241, 79 S. W. 769, 105 Am. St. Rep. 34, 65 L. R. A. 71, 2 Ann. Cas. 33. Neither does the presence of an unenrolled copy of the bill actually passed, without any official stamp thereon, in the files of the Secretary of State weaken our conclusion. Such bill is a fugitive paper, and so far as can be ascertained from its face, has never been through any official hands. It may have been presented to the Governor later than five days after adjournment (how long before that time it must be presented, we do not decide), if at all, which would be too late. Why it is there and

when it was put there is a matter of speculation and is of no serious moment in mitigation of our finding.

For the foregoing reasons, we are of the opinion that Chapter 87 of the Acts of the West Virginia Legislature, Regular Session, 1935 (contained in the printed acts), was not presented to the Governor as required by Article VII, Section 14 of the West Virginia Constitution, and, therefore, it has not been validly enacted and constitutes a nullity. In holding so, we do not undertake to say what relative weight shall be given to the various records in a case of this kind, or to fix the order of their importance. Sufficient it is, that this Court will weigh carefully all evidence designed to overthrow a duly authenticated part of the printed acts of the Legislature, ever endeavoring for certainty, and making every reasonable assumption in favor of the validity of its enactment.

The necessity of our holding in this case is beyond our control. The matter lies wholly in the hands of the Legislature.

The judgment of the Circuit Court of Kanawha County is accordingly reversed and the petition of defendants in error dismissed without prejudice to further proceedings in the event curative legislation is enacted.

*Reversed and dismissed.*