STATE *ex rel.* WILLIAM M. KIDD

*v.*

ROBERT D. BAILEY, IN HIS CAPACITY
AS SECRETARY OF STATE OF WEST VIRGINIA

(No. 12732)

Submitted March 19, 1968.          Decided March 26, 1968.

*Kay, Casto & Chaney, Vincent V. Chaney, Hoyt N. Wheeler,* for relator.

*C. Donald Robertson,* Attorney General, *Thomas B. Yost, Thomas P. O'Brien,* Assistant Attorneys General, for respondent.

BROWNING, JUDGE:

The Fifty-eighth Legislature, meeting in its regular thirty-day session in 1968, passed and sent to the Governor

for his approval or disapproval an act designated as Enrolled House Bill No. 334 which, inter alia, established the Thirty-second Judicial Circuit and provided that certificates of candidacy for the judgeship thus created might be filed with the Secretary of State through February 29, 1968. The bill was passed on February 6, 1968, presented to the Governor for his action on February 13, 1968, was disapproved by the Governor on February 16, 1968, and filed with his objections thereto in the office of the Secretary of State on that day. The thirty-day constitutional session would have expired on February 8, 1968, however the Governor on February 5, 1968, pursuant to his prerogative under the provisions of Article VI, Section 51, Subsection D of the Constitution, had extended the session through February 12, 1968, for the sole purpose of consideration and passage of the budget bill. The budget bill was passed and the Legislature adjourned *sine die* on February 10, 1968.

Petitioner, William M. Kidd, tendered his certificate of candidacy and filing fee for the office of Judge of the Thirty-second Judicial Circuit to the respondent, Secretary of State, in compliance with the filing date prescribed in the bill and, upon respondent's refusal to accept the same, instituted the instant proceeding in mandamus to compel respondent to do so. There is no dispute as to the facts above stated but only as to their legal effect, the petitioner contending that the Governor's disapproval came too late to nullify the bill and the respondent contending to the contrary.

The pertinent constitutional provisions are:

> Article VI, §18—"The legislature shall assemble annually at the seat of government, and not oftener, unless convened by the governor. Regular sessions of the legislature shall commence on the second Wednesday of January of each year. Notwithstanding any other provisions of the Constitution, the board of public works shall, on and after the effective date hereof, submit to the legislature an annual budget prepared as otherwise required by the Constitution."

Article VI, §22—"The regular session of the legislature held in the year one thousand nine hundred fifty-five and every second year thereafter shall not exceed sixty days, and the regular session held in the year one thousand nine hundred fifty-six and every second year thereafter shall not exceed thirty days. During any thirty-day session the legislature shall consider no other business than the annual budget bill, except such as may be stated in a proclamation issued by the governor at least ten days prior to the convening of the session, or such business as may be stated by the legislature on its own motion in a concurrent resolution adopted by a two-thirds vote of the members elected to each house. All regular sessions may be extended by the concurrence of two-thirds of the members elected to each house."

Article VI, §51, Subsection D—"First: If the 'Budget Bill' shall not have been finally acted upon by the legislature three days before the expiration of its regular session, the governor may, and it shall be his duty to issue a proclamation extending the session for such further period as may, in his judgment, be necessary for the passage of such bill; but no other matter than such bill shall be considered during such extended session except a provision for the cost thereof.

"* * *"

Article VII, §14—"Every bill passed by the legislature shall, before it becomes a law, be presented to the governor. If he approve, he shall sign it, and thereupon it shall become a law; but if not, he shall return it, with his objections, to the house in which it originated, which house shall enter the objections at large upon its journal, and proceed to reconsider it. If, after such reconsideration, a majority of the members elected to that house, agree to pass the bill, it shall be sent, together with the objections to the other house, by which it shall likewise be reconsidered, and if approved by a majority of the members elected to that house, it shall become a law, notwithstanding the objections of the governor. But in all such cases, the vote of each house shall be determined by yeas and nays to be entered on the journal. Any bill which shall not be returned by the governor within five days

(Sundays excepted) after it shall have been presented to him, shall be a law, in like manner as if he had signed it, unless the legislature shall, by their adjournment prevent its return, in which case it shall be filed with his objections in the office of the secretary of state, within five days after such adjournment, or become a law."

Two circumstances give rise to the problem herein presented— (1) the tripartite system of government which the people of this state have chosen by their constitution to be governed under; and (2) the adoption in the year 1918 by the people of this state of Article VI, Section 51 of the Constitution, the so-called "Budget Amendment," Subsection D of which, heretofore quoted, authorizes the Governor to extend a regular session of the Legislature for the sole purpose of consideration and passage of the budget bill. The Constitution specifically provides by Article V, Section 1, that the executive, legislative and judicial branches of government shall be separate and distinct, and provision is made in many places in that document to guarantee by checks and balances that no one department or branch shall be dominant over the other two. That fact is well illustrated in this case wherein all three branches of the government are called upon to perform duties relating to the fate of the bill in question.

The bill in controversy in this Court, the legislative journals show, was introduced as a valid order of business of the regular session of the Legislature, 1968, by virtue of the adoption by two-thirds of the members of each house of a concurrent resolution. Article VII, Section 14, which has not been amended since its adoption in 1872, provides the manner in which bills, validly enacted by the Legislature, shall become law. This Court has held that the provision therein, the section having heretofore been quoted in full, to the effect that a bill must "be presented to the governor" before it becomes a law is mandatory. This is the second syllabus point in *Charleston Nat'l. Bank v. Fox*, 119 W. Va. 438, 194 S. E. 4: . "Article VII, Section 14, West Virginia Constitution, requiring presentation of a bill to the Governor before it shall become a law, is

mandatory. Where the absence of such presentation is properly shown, the enactment is a nullity." The last mentioned section of the Constitution clearly provides that if a bill is presented to the Governor and a session of the Legislature continues thereafter for five days or more without any action by the Governor in regard to it, it becomes a law. It is clear also by that section that if the Governor disapproves a bill he must do so in writing stating his reasons therefor and return it to the house wherein it originated within five days of presentment to him. Those provisions are clear. But where a bill is presented to the Governor less than five days prior to adjournment of the legislative session the time element is not so clearly defined. For example, in the *Fox* case it is stated that if a bill is presented to the Governor "later than five days after adjournment (how long before that time it must be presented, we do not decide), * * *" it "would be too late." However, that statement is dicta inasmuch as the Court held in that case that the bill in question therein had never been presented to the Governor not even up to the time that the case was argued and briefed in this Court. In *State* v. *Heston*, 137 W. Va. 375, 71 S. E. 2d 481, is this language: "The section does not say that a bill after its passage must be presented to the Governor before the Legislature adjourns, and it does not require the Governor, at any time or within any specified period of time, to return to either House of the Legislature, or to file in the office of the Secretary of State, any bill presented to him which he approves and signs."

Article VII, Section 14, does not by any means give the absolute power to the Governor to prevent a bill from becoming a law. If during the session a bill is presented to the Governor and the Legislature is still in session five days later, the Governor, if he disapproves the bill, must return it to the house where it originated and his veto may be overridden by a simple majority of those elected to each house. If a bill be presented to the Governor within the last five days of the session, still the Legislature is not at the mercy of the Governor with regard to the bill for they may by a two-thirds majority of each house

continue in session until the period has passed in which the Governor may disapprove the bill, requiring it to be returned to the Legislature and, as heretofore noted, pass it over his veto. We do not have before us, and of course do not decide, the question of whether the Legislature, during an extension proclaimed by the Governor under the provisions of Section 51, could further extend its session by two-thirds vote or take up for consideration any bill disapproved by the Governor and returned with his objections in that period, although we admit to serious misgivings with regard thereto.

As heretofore stated this bill was finally passed on February 6, 1968, but it was not presented to the Governor until February 13, 1968, seven days later. There is no contention, of course, by the petitioner that such delay would in any way affect the validity of the bill and we find nothing in the Constitution specifying a time during a session when a bill must be presented to the Governor. It is the view of this Court that when Article VI, Section 51, is considered *pari materia* with Article VII, Section 14 of the Constitution there is no conflict and the sections may be considered harmonious for the purpose of resolving the question presented in this proceeding. The bill was presented to the Governor on February 13th, within five days of the nominal end of the thirty-day session and within three days of the adjournment of the extended session, and the time within which he was required to act to prevent the bill from becoming a law by his "veto" did not begin to run at least until such adjournment. As heretofore stated the Legislature adjourned *sine die* on February 10, 1968, making it impossible for the Governor to return the bill to the legislative house in which it originated regardless of how he might act upon it.

The narrow, precise question, then, which we have for determination is the meaning to be given to the word "adjournment" in Section 14. If that word is interpreted to mean the last day of the thirty-day session provided for in Article VI, Section 22, the Governor was two days late with his veto and the bill became law by operation of Section 14. If that word is interpreted to mean the last

day of the thirty-day session including the valid extension thereof promulgated by the Governor, then that event occurred on February 10th and the Governor's veto of February 16th was within the five-day period required by Section 14, inasmuch as one of those days was a Sunday and Sundays are specifically excluded by the section itself in computing such time. It is interesting, although not conclusive, to note that on what would have been the last day of the session without the extension the majority leader of the House of Delegates moved that that body adjourn until 10:00 o'clock a.m. on the 10th and his motion carried. After the passage of the budget bill on the 10th the Journal of the House of Delegates shows that the following occurred:

> "Mr. Christian, from the committee to notify His Excellency, the Governor, that the Legislature had completed the business of the session, was ready to adjourn *sine die* and to inquire of him if he had any further communication or message to the Legislature, reported that the Governor advised the committee that he had no further communication to make to the Legislature with respect to the business of the session; that he had requested the committee to express his congratulations to the members on the work of the session, thank them for their cooperation and wish them God speed.

> "At 2:10 p.m., on motion of Mr. Myles, the House of Delegates adjourned *sine die*."

This Court has found no case and none has been cited in brief of counsel in which the word "adjournment," as used in a constitution referring to the end of a legislative session has been interpreted to mean other than the final day of the session even though the session was validly extended only for a limited purpose. Therefore this Court is of the view and holds that the Governor was within the power conferred upon him by Article VII, Section 14 of the Constitution, and within the time limit prescribed therein, when on February 16, 1968, he disapproved this bill in writing stating the reasons therefor and on that day filed such in the office of the secretary of state.

*Writ denied.*