STATE *ex rel.* CHAUNCEY H. BROWNING, JR.,
ATTORNEY GENERAL OF WEST VIRGINIA

*v.*

C. A. BLANKENSHIP, CLERK OF THE HOUSE
OF DELEGATES OF WEST VIRGINIA

(No. 12938)

Submitted May 6, 1970.                Decided June 16, 1970.

254

*Cletus B. Hanley,* Deputy Attorney General, *Victor A. Barone,* Assistant Attorney General, for relator.

*Jack McCarty,* Assistant Attorney General, for respondent.

*Arch A. Moore, Jr.,* Governor, for intervenor (Arch A. Moore, Jr.).

PER CURIAM:

This is an original proceeding in mandamus in which the petitioner, the Honorable Chauncey H. Browning, Jr., Attorney General of West Virginia, seeks a writ to require the defendant, the Honorable C. A. Blankenship, Clerk of the House of Delegates of West Virginia, to publish the true Budget Act passed by the Legislature of West Virginia at its regular session, 1970, to include the amounts as appropriated by the Legislature without the reductions made by the Governor, and to furnish the petitioner true copies of the Act as so published.

Upon the petition and its exhibits filed March 3, 1970, this Court, on March 9, 1970, issued a rule returnable May 5, 1970. Because of prior cases this proceeding was not called for hearing until May 6, 1970, at which time the Honorable Arch A. Moore, Jr., Governor of West Virginia, hereinafter sometimes referred to as Governor or intervenor, filed his motion for leave to petition this Court for permission to intervene as a party defendant in this proceeding which

motion this Court sustained and permitted the movant, the Governor of West Virginia as intervenor, to be made a party defendant in this proceeding. At the same time, as intervenor, he filed his demurrer and answer to the petition of the Attorney General. To the answer of the intervenor the petitioner filed his demurer, and the defendant, C. A. Blankenship, Clerk of the House of Delegates, hereinafter sometimes referred to as Clerk, filed his demurrer to the petition of the Attorney General and his replication to the answer of the intervenor and an exhibit with the replication.

Upon the foregoing pleadings and the typewritten briefs and the oral arguments of the attorneys in behalf of the respective parties this proceeding was submitted for decision on May 6, 1970.

The material facts are not disputed and the questions presented for decision are questions of law.

On February 14, 1970, the Legislature of West Virginia, during its 1970 regular session, passed a Budget Bill, known as Enrolled Committee Substitute for Senate Bill No. 1, effective from its passage, which established the budget of the State of West Virginia for the next ensuing fiscal year 1970-1971, and thereafter adjourned sine die. The Budget Bill was presented to the Honorable Arch A. Moore, Jr., Governor of West Virginia, for his consideration, and on February 18, 1970, within five days after the adjournment of the Legislature, the Governor signed the Budget Bill with the notation "approved with reductions" and filed it in the office of the Secretary of State. When the Budget Bill was filed with the Secretary of State, a letter signed by the Governor and a list of reduced account numbers were attached. The letter stated, in part, "I herewith submit, in addition to the notations which I have made on the face of the bill and the reductions therein shown, a typewritten list of the account numbers so reduced."

From the copy of the Budget Bill filed as Exhibit 1 with the petition of the Attorney General, it appears that the Governor reduced the item under Account 240, Attorney

General, "Other Personal Services" from $583,360.00 to $280,626.00 or a reduction of $302,734.00, by striking the amount of $583,360.00 by drawing an inked line through it and inserting twice for that item the amount of $280,626.00 and adding to each, in pen and ink, the initials "A.A.M.,Jr.," and reduced the total of the appropriation for that account from $665,860.00 to $363,126.00 by striking the amount of $665,860.00 by drawing an inked line through it and inserting instead the amount of $363,126.00 and adding, in pen and ink, the initials "A.A.M.,Jr." There is no other notation on the Budget Bill with respect to either of the foregoing items and the only indication of the reduction in each is that the amount of the original appropriation for each item is eliminated and the reduced amounts are substituted for the original amounts in the manner indicated.

It also appears from the exhibit that the Governor reduced or eliminated, in the same manner, items in Accounts Numbers 120, Governor's Office; 150, Auditor's Office; 170, Sinking Fund Commission; 250, Secretary of State; 291, Educational Broadcasting Authority; 293, State Board of Education—Vocational Division; 296, Department of Education—Aid for Exceptional Children; 299, Commission on Higher Education; 410, Department of Mental Health; 440, State Board of Education—Rehabilitation Division; 495, West Virginia Racing Commission; 513, Department of Agriculture—Division of Rural Resources; 514, Department of Agriculture—Meat Inspection; 565, Department of Natural Resources; and claim of Hibbard, O'Connor & Weeks, Inc., against the State Department of Education.

The intervenor contends that as the Clerk has published or will publish the Budget Bill in both its original form as enacted by the Legislature and in its final form as amended by the Governor, the object of this mandamus proceeding has been accomplished and this proceeding is now moot. The Clerk denies that he has published or will publish the Budget Bill in both forms but states instead that he has prepared an informational galley of the Budget Bill solely for the purpose of informing persons, who inquire about the

status of the Budget Bill, that a proceeding in mandamus with respect to that matter is pending in this Court and that his action in that respect did not constitute the performance of the act sought to be required of him in this proceeding. There is no merit in the foregoing contention of the intervenor.

It is clear from the pleadings in this proceeding that the Clerk has not made any official publication of the Budget Bill in either its original or amended form. Since he has made no such official publication he may be compelled, at the instance of the Attorney General, to publish the Budget Act in its official form as provided by Section 13, Article 1, Chapter 4, Code, 1931, when the official form of the Act is determined in this proceeding. *Capito v. Topping,* 65 W.Va. 587, 64 S.E. 845, 22 L.R.A., N.S., 1089; *May v. Topping,* 65 W.Va. 656, 64 S.E. 848. In the *Capito* case this Court held in point 1 of the syllabus that *"Mandamus* is an appropriate remedy to compel the keeper of the legislative rolls to deliver, to a citizen, requiring it, a copy of an act passed by the legislature, and also to compel him to promulgate the same with the other acts passed, by printing and binding it with them for distribution and sale." In the opinion this Court used this language: "Assuming the validity of the acts in question, the right of the applicants [Capito, Sutherland and Reese] to have copies thereof and the propriety of the remedy invoked are clear beyond doubt. As citizens and tax-payers, they have a sufficient interest, and the statute makes the Clerk of the House the Keeper of the Rolls, and requires him to make and deliver a copy of any act to any person, requiring the same, on payment of the fee allowed therefor. Code, chapter 12, sections 13 & 14. That *mandamus* is the proper remedy to enforce performance of this duty is obvious, in view of legal principles, and has been judicially declared. *Wise v. Bigger, Clerk,* 79 Va. 269; *Wolfe v. McCaull,* 76 Va. 876." In the opinion in the *May* case this Court, referring to the *Capito* case, said that the right of petitioner to the remedy by mandamus to compel the certification and delivery to her of a copy of an act passed by the Legislature and to compel the keeper of the rolls to promulgate the act with

the other acts passed had been determined and upheld in the cases of *Capito, Sutherland* and *Reese* and that the opinion in those cases was controlling in the *May* case. Section 13, Article 1, Chapter 4, Code, 1931, relating to the duties of the Clerk of the House of Delegates, to the extent here pertinent, provides that: "As soon as possible after the close of each session, he shall prepare a well-arranged index to the acts and joint resolutions passed at such session, and shall furnish to the printer who has the contract for such printing the manuscript of such acts, resolutions and index and all matter directed by law to be printed therewith, properly prepared and arranged for publication, and shall superintend the printing thereof." See also *Charleston National Bank v. Fox,* 119 W.Va. 438, 194 S.E. 4.

Under the above quoted statute and the decisions of this Court, it is the mandatory duty of the Clerk of the House of Delegates of the West Virginia Legislature, at the instance of the Attorney General of West Virginia, to prepare and have published the authentic and official Budget Bill enacted by the Legislature and to furnish him requested copies of such bill and mandamus lies to compel the Clerk to perform his nondiscretionary duty of publishing such act and furnishing the requested copies. See *State ex rel. Smith v. Kelly,* 149 W.Va. 381, 141 S.E.2d 142.

The controlling question in this case is whether the manner in which the Governor, in the exercise of his veto power under the Constitution of this State, complied with the mandatory requirement of the Constitution in modifying the Budget Bill by reducing or eliminating various items in it.

The petitioner contends that the action of the Governor in reducing and eliminating the items in question was void and of no force and effect because he failed to comply with the constitutional requirement that he file his objections with the Budget Bill in the office of the Secretary of State within five days afer the adjournment of the Legislature. On the contrary, the Governor contends that he has complied with the requirement of the Constitution and that the Budget Act

as amended by him is in all respects a valid Act of the Legislature.

Article VI, Section 51, of the Constitution of West Virginia which was ratified on November 5, 1918, known as the Budget Amendment and which was in effect from its ratification, was completely rewritten and superseded by the amendment of that Article and Section of the Constitution, known as the Modern Budget Amendment, sometimes herein referred to as the Amendment, which was ratified and became effective November 5, 1968. Among the changes established by the Amendment was the transfer of the budget making power from the Board of Public Works to the Governor and the incorporation of certain express provisions empowering the Governor upon the conditions stated to veto every budget bill or supplementary appropriation bill enacted by the Legislature. Those provisions are:

"Every budget bill or supplementary appropriation bill passed by a majority of the members elected to each house of the legislature shall, before it becomes a law, be presented to the governor. The governor may veto the bill, or he may disapprove or reduce items or parts of items contained therein. If he approves he shall sign it and thereupon it shall become a law. The bill, items or parts thereof, disapproved or reduced by the governor, shall be returned with his objections to each house of the legislature.

"Each house shall enter the objections at large upon its journal and proceed to reconsider. If, after reconsideration, two thirds of the members elected to each house agree to pass the bill, or such items or parts thereof, as were disapproved or reduced, the bills, items or parts thereof, approved by two thirds of such members, shall become law, notwithstanding the objections of the governor. In all such cases, the vote of each house shall be determined by yeas and nays to be entered on the journal.

"A bill, item or part thereof, which is not returned by the governor within five days (Sundays excepted) after the bill has been presented to him shall become a law in like manner as if he had signed the bill,

unless the legislature, by adjournment, prevents such return, in which case it shall be filed in the office of the secretary of state, within five days after such adjournment, and shall become a law; or it shall be so filed within such five days with the objections of the governor, in which case it shall become law to the extent not disapproved by the governor."

The above quoted provisions of the Amendment confer upon the Governor a qualified, not an absolute, power of veto and prescribe the manner in which he shall exercise his power of veto, and as these constitutional provisions are clear and unambiguous and are mandatory in character they must be literally complied with and the failure of the Governor to exercise that power in the manner prescribed will render his veto invalid and of no force and effect. See, *State v. Heston*, 137 W.Va. 375, 71 S.E.2d 481; *Charleston National Bank v. Fox*, 119 W.Va. 438, 194 S.E. 4; *May v. Topping*, 65 W.Va. 656, 64 S.E. 848, *Capito v. Topping*, 65 W.Va. 587, 64 S.E. 845, 22 L.R.A., N.S., 1089. It is clear from the foregoing provisions that whether the Governor undertakes to exercise his power of veto before or after the adjournment of the session of the Legislature at which was passed the Budget Bill or the Supplementary Appropriation Bill which he proposes to veto he must return the bill with his objections to each House of the Legislature before adjournment or must file the bill with his objections in the office of the Secretary of State within five days after such adjournment, in order to make his veto effective. The manner in which the Governor should disapprove the bill or an item is by filing his objections with the bill as provided by the Amendment. See *May v. Topping*, 65 W.Va. 656, 64 S.E. 848.

Decision of the narrow question here involved depends upon the meaning of the word "objections" as used in the Amendment where it four times appears. It is clear that the words "disapproved" and "objections," as used in the Amendment, are not synonymous but are separate and distinct in meaning and effect. The action of the Governor in striking the items in question indicates that he disapproved of the items in their original form but mere disapproval does not

constitute an objection and does not satisfy the requirement of the Amendment that the Bill be filed with his objections.

These definitions of the word objection appear in BLACK'S LAW DICTIONARY, Fourth Edition, at page 1222: "Act of objecting; that which is, or may be, presented in opposition; an adverse reason or argument; a reason for objecting or opposing; a feeling of disapproval." These definitions of the word objection are contained in WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at page 1555: "something that is or may be presented in opposition: adverse reason or argument: reason for objecting or opposing." From the foregoing it is obvious that the proper or pertinent definition or meaning of the word objection, as used in the Amendment, contemplates the statement of a reason or reasons for an act of disapproval. This is clearly indicated by the procedure required to be followed by the Governor in the exercise of his veto power before the adjournment of the session of the Legislature at which the bill is passed. In that situation the Amendment provides that the bill, items or parts thereof, disapproved or reduced by the Governor, shall be returned with his objections to each House of the Legislature; that each House shall enter the objections at large upon its journal and proceed to reconsider; that if, after reconsideration, two thirds of the members elected to each House agree to pass the bill, or such items or parts thereof, as were disapproved or reduced, the bill, items or parts thereof, approved by two thirds of such members, shall become law notwithstanding the objections of the Governor. This provision requires the objections, which of course must be in writing, to be entered upon the journal of each House and indicates clearly that the objections shall state a reason or reasons, otherwise no purpose could be served or accomplished by their entry upon the journal for their reconsideration by each House. The meaning and effect of the words "with the objections" of the Governor in connection with the procedure for the exercise of the power of veto by the Governor of a bill, item or part thereof, which is filed in the office of the Secretary of State within five days after adjournment, and the words "with his objections" to be filed with the bill when returned

to each House of the Legislature are manifestly identical in substance in each instance. Though the objections stating reasons for the disapproval can not be considered by the Legislature after its adjournment they become a matter of record for consideration by the Legislature in the future or by the people of the State for such action, if any, as they may determine to take at some future date in connection with the action of the Governor. All these considerations indicate clearly that the word "objections" as used four times in the Amendment, means a statement of the reason or reasons for the disapproval and that the mere act of disapproval without the filing of the required objections does not satisfy the express requirement for the effective exercise of the power of veto by the Governor. In order to disapprove the items which the Governor undertook to reduce or eliminate from the Budget Bill it was necessary for him to file his objections with the bill. See *May v. Topping*, 65 W.Va. 656, 64 S.E. 848. In that case the Governor undertook to veto an item in the General Appropriation Bill after the adjournment of the Legislature and in so doing, to satisfy the requirement of Article VII, Section 15, of the Constitution, which was then in effect but has since been superseded by the Modern Budget Amendment. The constitutional provision considered in that case contained this language: "Every bill passed by the Legislature making appropriations of money, embracing distinct items, shall before it becomes a law, be presented to the Governor; if he disapprove the bill, or any item or appropriation therein contained, he shall communicate such disapproval with his reasons therefor to the House in which the bill originated; but all items not disapproved shall have the force and effect of law according to the original provisions of the bill. Any item or items so disapproved shall be void unless re-passed by a majority of each House according to the rules and limitations prescribed in the preceding section in reference to other bills." In that case this Court held in the syllabus that "In no event, has the Governor power to disapprove a bill making appropriations of the public money, embracing distinct items, or to disapprove any item therein, without communicating his disapproval thereof, with his reasons therefor, to the house in which the bill originated

before the adjournment of the legislative session." It should be noted that the foregoing Section of the Constitution made no provision for a veto of an appropriation bill after the adjournment of the legislative session and in that respect it differed materially from such a provision in the Amendment. That Section, however, made it clear that in order to effect a disapproval within the meaning of the Constitution, the Governor was required to communicate such disapproval with his reasons to the House in which the bill originated; and on that point the opinion contains this language: "It is this action of the Governor in communicating such disapproval, with his reasons therefor, to the house in which the bill originated, that consummates and effects a veto of the item. The communication of his disapproval, with his reasons therefor, is the disapproval itself. The obligation upon the Governor to communicate his disapproval of an item, with his reasons therefor, to the house in which the bill originated, is a mandatory one to bring about the qualified veto that is given him in such instances." Application of the principles set forth in the foregoing quotation makes it essential, under the express provisions of the Amendment, that the Governor file the bill with his objections in the office of the Secretary of State within five days after the adjournment of the Legislature in order to make his veto as to any item or items effective. That action of the Governor which disapproves an item is separate and distinct from his objections is made manifest by the language of the Amendment which indicates clearly that in order to disapprove the bill, or any of its items, his objections must be filed with the bill, and that without the filing of the objections the items of the bill can not be validly disapproved. In discussing the words "so disapproved," in Article VII, Section 15, of the Constitution which, as indicated, has been superseded by the Amendment, this Court, in the opinion in the *May* case, said: "What do the words 'so disapproved' mean? The use of these words makes one to inquire: *How disapproved?* Clearly they relate not simply to disapproval in the mind of the Governor, but to some act of disapproval, some manner of disapproval. That act or manner of disapproval, provided for just above these words, and to which 'so disapproved' clearly relates, is by

communication with reasons to the house in which the bill originated."

As the Governor filed no objections with the Budget Bill when he filed it in the office of the Secretary of State, his action in undertaking to reduce or eliminate the items in question is null and void and of no force or effect. See *State v. Heston*, 137 W.Va. 375, 71 S.E.2d 481.

Determination of the meaning and effect of the word "objections" in the Amendment, as indicated, is in accord with the procedure prescribed in Article VII, Section 14, of the Constitution, which relates to, and governs the exercise of the veto power of the Governor with respect to Acts of the Legislature other than budget and supplementary appropriation acts.

Article VII, Section 14, of the Constitution of this State is couched in this language: "Every bill passed by the legislature shall, before it becomes a law, be presented to the governor. If he approve, he shall sign it, and thereupon it shall become a law; but if not, he shall return it, with his objections, to the house in which it originated, which house shall enter the objections at large upon its journal, and proceed to reconsider it. If, after such reconsideration, a majority of the members elected to that house, agree to pass the bill, it shall be sent, together with the objections to the other house, by which it shall likewise be reconsidered, and if approved by a majority of the members elected to that house, it shall become a law, notwithstanding the objections of the governor. But in all such cases, the vote of each house shall be determined by yeas and nays to be entered on the journal. Any bill which shall not be returned by the governor within five days (Sundays excepted) after it shall have been presented to him, shall be a law, in like manner as if he had signed it, unless the legislature shall, by their adjournment prevent its return, in which case it shall be filed with his objections in the office of the secretary of state, within five days after such adjournment, or become a law."

Though the exercise of the veto power by the Governor of particular items in the Budget Bill is, of course, not governed by the provisions of Article VII, Section 14, of the Constitution of this State, the language of the two constitutional provisions is identical with respect to the requirement that the bill in each instance be filed with the "objections" in the office of the Secretary of State within five days after the adjournment of the Legislature. In considering the exercise of the veto power of the Governor of a nonappropriation bill under Article VII, Section 14, of the Constitution of this State, this Court, in *Capito v. Topping*, 65 W.Va. 587, 64 S.E. 845, 22 L.R.A., N.S., 1089, held in point 5 of the syllabus that "The provision in section 14 of Article VIII [VII] of the Constitution of this State, requiring the Governor to file a bill, with the objections thereto, in the office of the Secretary of State, within five days after the adjournment of the legislature, in order to effect a veto thereof, is mandatory, in respect to both the time and the manner of exercising the power." In the opinion with respect to the character of that veto provision of the Constitution, this Court said:

"In view of the terms, as well as the nature of this clause, it must be held to be mandatory, not merely directory. Constitutional provisions are organic. They are adopted with the highest degree of solemnity. They are intended to remain unalterable except by the great body of the people, and are incapable of alteration without great trouble and expense. * * * . So they necessarily stand on a much higher plane than mere statutes, and the courts, as a rule, do not feel warranted in upholding deviations from them in respect to the manner and time of the performance of acts, prescribed or required by them. * * * . Tested by its terms, the clause under consideration may be said to be in mandatory form, though form is not always conclusive. The passage of the act makes it law, subject to a contingency, the executive veto. If the Governor desires to veto a bill, after the adjournment of the legislature, it must be filed, with his objection, 'in the office of the Secretary of State within five days after such adjournment, or become a law.' It is alternative and emphatic,

saying if a certain thing is not done, another shall happen. Unlike many other provisions, it does not stop with the prescription of the affirmative act, leaving the consequence of failure to inference. It declares the sequence. We are aware of no decision authorizing the view that a constitutional clause, dealing with matters so high and vital in character as the executive power of veto, and the making of laws, and having form and terms so emphatic, is merely directory." The language just quoted applies with peculiar force to the express requirement of the Amendment as to the exercise of the veto power of the Governor in connection with the Budget Bill or any of its items or parts.

This Court has also held that the provision of the Constitution which requires presentation of a bill to the Governor before it shall become a law is mandatory and that in the absence of such presentation the enactment of the statute is a nullity. *Charleston National Bank v. Fox,* 119 W.Va. 438, 194 S.E. 4.

Article VII, Section 14, of the Constitution with respect to the requirement that the Governor, in the exercise of his power of veto, shall file his objections with the bill which he seeks to veto in the office of the Secretary of State, was considered by this Court in the recent case of *State ex rel. Kidd v. Bailey,* 152 W.Va. 196. 160 S.E.2d 142. In that case the Governor complied with the requirements of the constitutional provision and filed the bill with his objections in the office of the Secretary of State within five days after the adjournment of the legislative session and in sustaining the veto this Court gave to the words "with his objections" in Section 14 the same meaning and effect as "his reasons," as clearly appears from this language in the opinion: "The last mentioned section of the Constitution [Section 14, Article VII] clearly provides that if a bill is presented to the Governor and a session of the Legislature continues thereafter for five days or more without any action by the Governor in regard to it, it becomes a law. It is clear also by that section that if the Governor disapproves a bill he must do so in writing *stating his reasons therefor* and return it to the house wherein

it originated within five days of presentment to him. Those provisions are clear." (Emphasis supplied.) The quoted statement shows clearly that this Court considered in the *Bailey* case, as it now considers in the case at bar, that the words "with his objections" have the same meaning and effect as the words "with his reasons" in Article VII, Section 15, of the Constitution which, as indicated, has been superseded by the Amendment. In short, this Court holds that the words "with his objections" have the same meaning and effect as the words "with his reasons" and that the word "objections" in the Amendment means an adverse reason or argument as defined in BLACK'S LAW DICTIONARY, Fourth Edition, at page 1222, cited earlier in this opinion.

The brief filed by the Governor in this proceeding states that "In the alternative, the Governor's actions in amending the Budget Bill were in lawful and substantial, though not literal, compliance with the provisions of the Modern Budget Amendment," and in support of that contention cites and relies upon the decisions of this Court in *State ex rel. Smith v. Kelly,* 149 W.Va. 381, 141 S.E.2d 142; *State ex rel. Morgan v. O'Brien,* 134 W.Va. 1, 60 S.E.2d 722; and *Herold v. Townsend,* 113 W.Va. 319, 169 S.E. 74. This contention is not well founded. The cases cited dealt with a constitutional provision requiring publication of a proposed constitutional amendment. In the *Kelly* case and the *Townsend* case literal compliance was not required and substantial compliance was held to be sufficient for the reason that there had been extensive publicity of the character of the proposed amendment to enable the electorate to understand and exercise its judgment in voting upon it, and that the absence of strict compliance was not prejudicial and the vote in favor of the adoption of the Amendment in each case indicated that for all practical purposes the publicity, aside from the publication required by the constitutional provision, was sufficient to impart to the electorate substantially the same amount of information that would have been imparted to the electorate if there had been strict compliance with the mandatory provision of the Constitution concerning publication of the amendment. In the *O'Brien* case, though there had been no vote upon the

proposed constitutional amendment, this Court held that substantial compliance was sufficient as indicated in the *Kelly* and *Townsend* cases.

Those cases are not controlling in the decision of this case. That the exercise of the veto power is readily distinguishable from the requirement of the publication of a proposed amendment to the Constitution involved in the *Kelly, Townsend* and *O'Brien* cases, is made clear by this statement in the opinion of this Court in the *Capito* case: "We are aware of no decision authorizing the view that a constitutional clause, dealing with matters so high and vital in character as the executive power of veto, and the making of laws, and having form and terms so emphatic, is merely directory." The express provision of the Modern Budget Amendment here involved, which is plain and unambiguous and is mandatory in character, is not satisfied by substantial compliance but instead must be accorded full and literal compliance.

Under the applicable provisions of the Modern Budget Amendment, which are plain and unambiguous and mandatory in character, and upon the authority of the cited decisions of this Court, this Court holds that:

(1) Mandamus is the proper remedy, at the instance of the Attorney General, to compel the Clerk of the House of Delegates, as keeper of the rolls, to publish the official Budget Act and to furnish the requested copies when such act has been officially determined in this proceeding;

(2) In the exercise of the power of the Governor to veto a budget bill or any of its items or parts after the adjournment of the Legislature, the provision of the Modern Budget Amendment that the bill shall be filed in the office of the Secretary of State, within five days after such adjournment with the objections of the Governor, must be literally complied with and the failure to file his objections with the bill in the office of the Secretary of State within the five day period renders his veto and the reduction or elimination of any item or part of the bill invalid and of no force and effect;

(3) The word "objections," as used in the Modern Budget Amendment, means a statement of an adverse reason in opposition to a budget bill, or its items or parts, and the action of the Governor in the elimination of the amount of an item in the bill by striking the amount by drawing a line through the figures or the substitution of a reduced amount and the addition of the initials of the Governor does not constitute the objections required by the Amendment; and

(4) The failure of the Governor to file his objections with the Budget Bill when it was filed in the office of the Secretary of State within five days after the adjournment of the Legislature renders the exercise of the veto power of the Governor ineffective and because of the ineffective exercise of that power, the Budget Bill as passed by the Legislature, and not as amended by the Governor, is the valid official Budget Act for the fiscal year 1970-1971.

The writ of mandamus as prayed for in the petition of the Attorney General is awarded.

Judge Browning, deeming himself disqualified, did not participate in the consideration or decision of this case.

*Writ awarded.*