ED JACKAMONIS, Speaker State Assembly
You request my opinion on the effect of discrepancies between the Governor's veto message to the Legislature and the copy of 1981 Assembly Bill 66 deposited with the Secretary of State. *Page 190 
You ask three questions:
First, you ask whether sec. 1274gm of Assembly Bill 66 was vetoed by the Governor.
My answer is "no."
Second, you ask whether secs. 733s, 1089r, 1089t, 1089wm, 1089z, 1090f, 1090fb, 1090fc, 1090fe, 1090km, 1154p, 1154r, 1154sg, 1154sh, 1154t, 1180 and 1392jm of Assembly Bill 66 were vetoed by the Governor.
My answer is "no."
Third, you ask whether the sec. 20.370(1)(kr) appropriation line of sec. 120sm of Assembly Bill 66 was vetoed by the Governor.
My answer is "no."
The essential facts are as follows:
On July 27, 1981, engrossed Assembly Bill 66, the 1981 Budget Bill, was presented to the Governor for his action, i.e., approval, partial approval and partial veto or veto. Governor Dreyfus partially approved and partially vetoed Assembly Bill 66 and on July 29 delivered the entire bill, technically an Act at that time, with his vetoes thereon to the Secretary of State pursuant to law. On the same day, July 29, Governor Dreyfus sent his veto message to the Assembly. On July 30, ch. 20, Stats., was published in the Wisconsin State Journal. The publication showed the Governor's vetoes as submitted to the Secretary of State. Upon checking the published version against the Governor's veto message, a large discrepancy in the number of sections vetoed was observed. In some cases sections were listed as vetoed in the Governor's message which were not marked as vetoed on the Act deposited with the Secretary of State. In other cases sections were marked on the Act as having been vetoed which were not mentioned in the Governor's message to the Legislature. On or about August 4, 1981, the Governor submitted an amended message to the Legislature seeking to correct or clarify many of the errors or omissions of the original message. *Page 191 
The Governor's attempt to correct or clarify with an amended message in my opinion is completely ineffective. Not only had the Governor put the bill beyond his reach with the first message and deposit with the Secretary of State, but the six-day limitation for veto action imposed by the constitution had also run.
The Governor's veto power is derived from Wis. Const. art. V, sec. 10, which provides:
 Every bill which shall have passed the legislature shall, before it becomes a law, be presented to the governor; if he approve, he shall sign it, but if not, he shall return it, with his objections, to that house in which it shall have originated, who shall enter the objections at large upon the journal and proceed to reconsider it. Appropriation bills may be approved in whole or in part by the governor, and the part approved shall become law, and the part objected to shall be returned in the same manner as provided for other bills. If, after such reconsideration, two-thirds of the members present shall agree to pass the bill, or the part of the bill objected to, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered, and if approved by two-thirds of the members present it shall become a law. But in all such cases the votes of both houses shall be determined by yeas and nays, and the names of the members voting for or against the bill or the part of the bill objected to, shall be entered on the journal of each house respectively. If any bill shall not be returned by the governor within six days
(Sundays excepted) after it shall have been presented to him, the same shall be a law unless the legislature shall, by their adjournment, prevent its return, in which case it shall not be a law.
(Emphasis supplied.)
The veto power granted the Governor is negative in the sense that if the Governor fails to act, or fails to act in a manner consistent with the procedures mandated by the constitution, the bill as enacted by the Legislature becomes law. Wis. Const. art. V, sec. 10. Publication serves to make the law enforceable. Wis. Const. art. IV, sec. 17; sec. 985.04, Stats. *Page 192 
The Wisconsin Supreme Court has discussed at length the procedures mandated by the constitution in State ex rel. Kleczkav. Conta, 82 Wis.2d 679, 264 N.W.2d 539 (1978). Although the issue presented by the facts in Kleczka differ from those involved here, the language in Kleczka provides guidance as to how the court would react if presented with the facts under consideration here. As stated in Kleczka, 82 Wis.2d at 700:
 [W] hat is necessary for the Legislature to proceed with a vote to override a veto is a written objection by the Governor addressed to the Legislature which may be entered in the legislative journal with sufficient completeness that the Legislature knows the nature and scope of the Governor's objections . . . . The constitutionally required return was made when the Governor submitted his objections to the bill and his veto message in a timely fashion to the originating house of the Legislature. The Constitution requires no more.
The court in Kleczka goes on to acknowledge that requiring the physical return of the bill would be a mere formality which the constitution does not require. The Supreme Court of Wisconsin acknowledges in this case that the reality of the process is that the Legislature must consider both the message and the bill itself. See discussion in Kleczka, 82 Wis.2d at 698-700, as to how the Governor in practice returns the vetoed portion of an appropriation bill to the Legislature to be in compliance with the constitution. It is the usual practice of the Legislative Reference Bureau to provide each legislator with a copy of the Budget Bill showing the Governor's vetoes. Using the two documents together, each legislator can consider the Governor's partial veto. The Legislature as a body can then determine whether or not to override the veto.
The problem with the Governor's partial veto of Assembly Bill 66 is that when the Governor's message and the Budget Bill are viewed together there are a number of instances in which it is unclear exactly what the Governor had chosen to veto. This ambiguity, in my opinion, is fatal to his vetoes in a number of instances in which it appears the Governor may have been attempting to exercise his power of partial veto. *Page 193 
Your first question involves sec. 1274gm of Assembly Bill 66. In the Act deposited with the Secretary of State this section is shown as "vetoed" along with adjoining secs. 1274g and 1274gr. Section 1274gm of Assembly Bill 66 reads as follows:
100.215 of the statutes is created to read:
 100.215 Unfair trade practices in the insulation industry. The department shall establish rules regulating home insulation trade practices. The rules shall include, without limitation because of enumeration:
 (1) Standards for the type and amount of insulation to be installed.
 (2) Standards for measuring compliance with the contract and warranty provisions protecting a consumer.
 (3) Standards for safe installation of insulation and provision for the correction of unsafe installations.
Section VI-C of the Governor's message reads:
INSULATION TESTING LABORATORY
(Sections 120sm, 120sp, 1274g and 1274gr)
 This provision would have allocated one position and about $100,000 in order to establish an insulation testing laboratory in the Department of Agriculture, Trade and Consumer Protection. I have vetoed this proposal because the Department already has authority through s. 100.21 to protect the public from false energy savings and safety claims. The Department might review laboratory facilities in the University System to determine if needs could be met in a cooperative way.
The Governor's message, when read in conjunction with the Budget Bill itself, is sufficient to comply with the constitutionally mandated procedure for vetoing those sections of the Bill which relate to the creation of an insulation testing laboratory. The Governor's message, however, is insufficient to veto sec. 1274gm because the objection listed does not relate with sufficient clarity to the content of the portion of the Budget Bill marked as vetoed. *Page 194 
In my opinion, sec. 1274gm is law and should be published as such by the Secretary of State. In order for the Governor's veto to be effective he must list his objections. 28 Op. Att'y Gen. 423 (1939); State ex rel. Link v. Olson, 286 N.W.2d 262 (N.D. 1979); Welden v. Ray, 229 N.W.2d 706 (Iowa 1975); State ex rel.Browning v. Blankenship, 154 W. Va. 253, 175 S.E.2d 172 (1970);Arnett v. Meredith, 275 Ky. 223, 121 S.W.2d 36 (1938). In this instance he simply failed to do so. As a result, sec. 1274gm of Assembly Bill 66 has not been vetoed in accordance with the procedures mandated by the Wisconsin Constitution and is law. The Secretary of State should publish sec. 1274gm since it has not been vetoed.
Your second question involves a number of sections which were listed in the Governor's veto message which were not shown as vetoed in the Act deposited with the Secretary of State. In my opinion, since the Governor did not specify his objections to these sections, they have not been effectively vetoed and they are law despite having been listed in the Governor's veto message. Again, when viewing the Governor's message and the Budget Bill together, it is unclear what, if anything, the Governor intended to veto. It is impossible to tell from the text appearing along with the listing of section numbers what it was that the Governor is objecting to in the Budget Bill. There are no markings or other indications on the Bill itself which might indicate what the Governor desired to veto; whether it be a word, a paragraph or the entire section.
As the court stated in Kleczka, 82 Wis.2d at 700, the objection must be made "with sufficient completeness that theLegislature knows the nature and scope of the Governor'sobjections." (Emphasis added.) The Governor failed to provide the Legislature with sufficient information so that it could intelligently consider the Governor's vetoes. As a result, in each of the instances you have cited, the Governor has failed to comply with the constitutionally mandated procedure for vetoing legislation. The sections you inquire about in your second question are therefore law. Since they have already been published as such by the Secretary of State there is no need for further action in order that they may be enforced.
Your third question involves the sec. 20.370(1)(kr) appropriation line of sec. 120sm of Assembly Bill 66. In this instance the appropriation *Page 195 
line is shown as vetoed in the Bill deposited with the Secretary of State, but it is not, to my knowledge, referred to in the veto message. Therefore, for the reasons stated above, it has not been effectively vetoed. Furthermore, the question of whether the veto is effective seems irrelevant since sec. 202p of Assembly Bill 66 creates the appropriation in sec. 20.370(1)(kr) as a sum sufficient to reimburse sec. 20.866(1)(u). Section 202p was not shown as vetoed in the Bill deposited with the Secretary of State nor was it referenced in the Governor's veto message. As a result, sec. 202p is law and establishes sec. 20.370(1)(kr) as a sum sufficient appropriation. Any remaining ambiguity as to the effect of this apparent conflict is resolved by sec. 20.004, Stats., which provides: "If any conflict exists between ss. 20.100 to 20.899 and s. 20.005, ss. 20.100 to 20.899 shall control and s. 20.005 shall be changed to correspond with ss. 20.100 to 20.899."
As the United States Supreme Court stated in Wright v. UnitedStates, 302 U.S. 583, 596 (1938):
 The constitutional provisions have two fundamental purposes; (1) That the President shall have suitable opportunity to consider the bills presented to him; and (2) that the Congress shall have suitable opportunity to consider his objections to bills and on such consideration to pass them over his veto provided there are the requisite votes.
The procedures followed by the Governor in the instances you have pointed out are insufficient to inform the Legislature of the nature and scope of the Governor's objections. Since the Governor has failed to comply with the constitutionally mandated procedures in these instances his vetoes are ineffective. The Bill as passed by the Legislature and not as purportedly vetoed by the Governor in these instances has become law. Only in the case of sec. 1274gm of Assembly Bill 66 need the Secretary of State publish the law in order to make it enforceable. In each of the other situations you cite the Secretary of State has already complied with the constitutional and statutory requirement of publication.
BCL:WHW *Page 196